**J. C. BREEDLOVE, Sr., Plaintiff,**

v.

**BEECH AIRCRAFT CORPORATION,
Defendant.**

**No. DC 7033.**

United States District Court,
N. D. Mississippi,
Delta Division.

Sept. 14, 1971.

Tom H. Davis, Austin, Tex., Charles C. Finch, Batesville, Miss., for plaintiff.

William E. Suddath, Jr., Jackson, Miss., for defendant.

## MEMORANDUM OPINION ON MOTION TO DISMISS

KEADY, Chief Judge.

In this diversity action, plaintiff, J. C. Breedlove, Sr., a Mississippi citizen, sues Beech Aircraft Corporation (Beech), a foreign corporation chartered under Delaware laws and having its principal place of business at Wichita, Kansas, for bodily injuries arising out of a products liability claim. The accident on which the claim is based occurred on or about July 28, 1968, when plaintiff, the owner and pilot of a Model A–35 Beechcraft Bonanza airplane, was forced to make a crash landing in Yell County, Arkansas. By his complaint, plaintiff alleges that the crash was caused by the malfunctioning of a Beech electric propeller, Model R–203, designed, manufactured, assembled and placed on the market by Beech and intended by it to be used in the Model A–35 airplanes manufactured by Beech, and as designed and manufactured the electric propeller was unsafe and not reasonably fit for use.

Summons upon Beech was served through the office of the Mississippi Secretary of State, pursuant to the state's long-arm statute, Miss.Code Ann. § 1437.[1] Beech has moved to dismiss

---

1. § 1437 in relevant part provides:
"... [A]ny foreign ... corporation not qualified under the Constitution and laws of this State as to doing business herein, who shall make a contract with a resident of this State to be performed in whole or in part by any party in this State, or *who shall commit a tort in whole or in part in this State against a resident of this State*, or who shall do any business or perform any character of work or service in this State, shall by such act or acts be deemed to be doing business in Mississippi. Such act or acts shall be deemed equivalent to the appointment by such nonresident of the Secretary of State of the State of Mississippi, or his successor or successors in office, to be the true and lawful attorney or agent of such nonresident upon which all lawful process may be served in any actions or proceedings accrued or accruing from such act or acts, or arising from or growing out of such contract or

the action for lack of jurisdiction, asserting that it is not subject to suit locally since it is a foreign corporation which is neither qualified to do business nor has ever done business in Mississippi. The matter is now ripe for the court's decision on this motion.

The affidavits and depositions on file disclose that Beech maintains no employees or agent for service of process in the state, nor does it own any property, real or personal, situated in Mississippi. Beech manufactures aircraft and parts and equipment therefor and markets its products through distributors, none of whom is located in Mississippi. Beech-appointed distributors, in turn, sell Beech products through dealers designated by distributors. Beech has no relationship, legal or otherwise, with such dealers. At one time a Beech distributor in Baton Rouge, Louisiana, sold Beech products in Mississippi; more recently, a Beech distributor located in Tulsa, Oklahoma, designated a dealer in Jackson, Mississippi, to handle Beech products, but this dealership was terminated prior to the filing of suit. Beech has no financial interest in either of the two distributorships which in past years have had Mississippi territory.

The evidence also indicates that in 1949 Beech manufactured plaintiff's aircraft at its Wichita, Kansas plant, and on November 30 of that year sold it to a firm in Chicago, Illinois. In 1965 plaintiff became the eighth owner of the aircraft by purchase from a resident of North Carolina. On December 3, 1949, the electrically controlled variable pitch propeller which Beech manufactured and originally installed on the airplane was removed by the airplane's second owner, and a constant speed propeller was installed. This propeller apparently remained on the aircraft until June 1968 when plaintiff took the airplane for an annual inspection to DeSoto Air Park, Inc., a fixed base operator located in DeSoto County, Mississippi. Determin-

ing that the propeller should be replaced, DeSoto Air Park bought, second-hand, from a source in Memphis, Tennessee, an electrically controlled Beech variable pitch propeller, Model R–203, which it installed on plaintiff's aircraft in DeSoto County. This model propeller, which was manufactured by Beech in 1949, was the same type that was originally installed on plaintiff's Beechcraft Bonanza. When it did not work properly, the propeller was removed and twice sent to Aero Industries, a propeller shop at Greenville, Mississippi, for repairs. The propeller was then returned to DeSoto Air Park, which reinstalled it on plaintiff's plane on July 20, 1968. Eight days later, after 20 hours of flight time, the plane crashed in Arkansas.

The pertinent allegations of plaintiff's two-count complaint, which must be taken as true for the purpose of ruling upon Beech's motion challenging our jurisdiction, are:

"4.

Prior to July 28, 1968, the defendant designed, manufactured, assembled and placed upon the market Beech Electric Propellers and component parts, which were intended by defendant to be used in aircraft such as the Beechcraft Bonanza, Model A–35. Defendant knew that these propellers and its components would be so used, and by placing these propellers and components on the market represented that they were not defective and were safe and suitable for the use to which they were intended. The propeller and components identified above were unsafe and unsuitable for their intended use by reason of the fact that because of defects the propeller malfunctioned. As a direct and proximate cause of these defects complainant sustained the injuries and damages herein alleged and complainant alleges and charges defendant with strict liability.

\* \* \* \* \* \*

tort, or as an incident thereto, by any such nonresident or his, their, or its agent, servant or employee . . . ." (Emphasis added)

**6.**

Complainant further alleges that defendant knew that propellers and components of the type described above would be used on aircraft such as the Beechcraft Bonanza, Model A–35, and by advertising and placing them on the market for these purposes defendant represented and warranted to complainant that the propellers and components were suitable and reasonably fit for the purposes for which they were intended to be used. Although complainant relied upon the skill and judgment of defendant and upon the implied warranty of suitability for the purpose for which the propellers and components were designed, manufactured and sold on the market, said warranty was not true and the propeller and components identified herein were not suitable and were not reasonably fit for the purpose for which they were intended to be used. As a direct and proximate result of the breach of warranty, complainant sustained the injuries and damages herein alleged."

■ It is necessary only to consider ¶ 4, which is based upon strict liability in tort, since that doctrine was adopted in Mississippi in State Stove Manufacturing Co. v. Hodges, 189 So.2d 113 (Miss.1966), where the Court expressly approved § 402A of the American Law Institute's Restatement of Torts (Second)[2] insofar as it applies to a manufacturer of a product. Because strict liability of tort is recognized in Mississippi, plaintiff states a claim for relief without regard to a theory of

breach of warranty alleged in ¶ 6 of the complaint.

■ Moreover, it is no longer necessary, in a products liability claim, to determine whether the manufacturer is "doing business", as interpreted by earlier Mississippi decisions, to render the nonresident manufacturer subject to suit and jurisdiction under the state's long-arm statute.

Beech concedes that the expanded interpretation recently accorded to § 1437 by the state Supreme Court, Smith v. Temco, Inc., 252 So.2d 212 (Miss.1971), and the Fifth Circuit, Dawkins v. White Products Corp. of Middleville, Michigan, 443 F.2d 589 (5 Cir. 1971), has greatly broadened the scope of in personam jurisdiction over nonresident manufacturers in tort cases. Indeed, the amendatory language to § 1437 when added in 1964, viz: "who shall commit a tort in whole or in part in this State against a resident of this State", was held to embrace a new and distinct category of nonresident defendants now subject to suit in Mississippi. With respect to a products liability claim, the Court in *Temco* specifically held:

"Under the amended statute, a nonresident manufacturer of a dangerously defective or unsafe product who places it in interstate commerce for the purpose of distribution and ultimate sale to consumers in other States, whether with a specific intent that it be distributed, sold and used in this State or not, may be subjected to a personam action for damages in the courts of this State by such consumer who may be injured in this State as a

---

2. Special Liability of Seller of Product for Physical Harm to User or Consumer—

(1) One who sells any product in a defective condition unreasonably dangerous to the user or consumer or to his property is subject to liability for physical harm thereby caused to the ultimate user or consumer, or to his property, if

(a) the seller is engaged in the business of selling such a product, and

(b) it is expected to and does reach the user or consumer without substantial

change in the condition in which it is sold.

(2) The rule stated in Subsection (1) applies although

(a) the seller has exercised all possible care in the preparation and sale of his product, and

(b) the user or consumer has not bought the product from or entered into any contractual relation with the seller.

result of its defective or unsafe condition."[3]

Beech attempts to distinguish *Temco* upon two grounds: First, the electric propeller in question, by undisputed evidence, was not bought new but many years after its original manufacture and sale by Beech, and it was not placed in service by plaintiff until after it had been worked on by parties for whom Beech was not responsible; and second, plaintiff was injured in Arkansas and not *in this state*, so as to come within *Temco's* literal words that "if the injury occurs in this State . . . the tort is committed, at least in part, in this State." Neither contention has merit.

Plaintiff's action for strict liability in tort does not rest upon allegations of defective conditions subsequently appearing in a properly manufactured product but upon defective design of the entire propeller system which made it unsafe for use on the aircraft. Whether the propeller was in fact defective or who may be responsible for its malfunctioning are, of course, questions reserved for trial. Under plaintiff's view, in 1949, at the time plaintiff's aircraft was manufactured, Beech designed and placed into the channels of interstate commerce and sale for use by aviation consumers the electric propeller in question, allegedly unreasonably dangerous at any time for use in its manufactured condition. Assuming the truth of this averment, *arguendo*, Beech's liability in tort as manufacturer becomes fixed whenever injury occurs as a proximate result of using the defectively designed product in the manner which Beech intended. Necessarily this liability may not be limited to the product's

first purchaser or user but extends to all successive users. For analogous facts, see Eyerly Aircraft Co. v. Killian, 414 F.2d 591 (5 Cir. 1969), and authorities discussed in Coulter v. Sears, Roebuck & Co., 426 F.2d 1315 (5 Cir. 1970). Both of these Texas cases are referred to in *Dawkins* as illustrative of the scope of long-arm statutes like Mississippi's.

Again, to limit the reach of § 1437 in products liability cases "to injuries in this state" unduly restricts the clear meaning of the statute. The statutory purpose is to afford to Mississippi residents a right of action locally against the nonresident who commits a tort, in whole or *in part*, in this state against a resident of this state. There is no statutory requirement that the part of the tort which causes the injury be committed in Mississippi; the words require only that a part of the tort be committed in this state. A clearly recognizable segment of the tort of strict liability is the placing by a manufacturer of a defectively designed and manufactured product into the stream of commerce and its ultimate delivery in this state to a Mississippi resident. Here, Beech placed the electric propeller which it made in the channels of interstate commerce for sale; through the channels of trade it was acquired by DeSoto Air Park, which brought it into Mississippi for resale to plaintiff and installation upon his aircraft. These acts were the natural and probable consequence of Beech's originally placing the propeller on the market for sale and support a finding that a significant part of the allegedly tortious conduct occurred in Mississippi, resulting in injury to a resident of this state.

For the above reasons, defendant's motion to dismiss is overruled.

3. This holding necessarily supersedes contrary conclusions reached by this court in Smith v. Barker, 306 F.Supp. 1173 (N.D.Miss.1968), and Neal v. Trim-Master Corp., 48 F.R.D. 390 (N.D.Miss. 1969).