295 So.2d 746 (1974)
The TRANE COMPANY
v.
H.L. TAYLOR and the United States Fidelity & Guaranty Company.
No. 47563.
Supreme Court of Mississippi.
June 10, 1974.
*747 Holcomb, Dunbar, Connell & Merkel, Grady F. Tollison, Jr., Clarksdale, Carlton & Henderson, Sumner, for appellant.
Breland & Whitten, Sumner, for appellee.
GILLESPIE, Chief Justice:
The Trane Company, a Wisconsin corporation, sued H.L. Taylor and the surety on his performance bond, the United States Fidelity & Guaranty Company, in the Circuit Court of Tallahatchie County for recovery of the purchase price of air conditioning equipment. Taylor included in his answer an affirmative defense based on the contention that the Trane Company is a foreign corporation doing business in the State of Mississippi without having qualified to do business in this state, and, therefore, has no right to sue in the courts of Mississippi. This affirmative defense was set down for separate hearing, and the court found that Trane was doing business in Mississippi and was not qualified to do so and dismissed the case. Trane appealed.
Trane filed its suit to recover from Taylor, a contractor who entered into a contract with the City of Charleston, Mississippi, for construction of a building. United States Fidelity & Guaranty Company was surety on Taylor's performance bond. Taylor subcontracted the heating and air conditioning to another firm. Trane Company furnished equipment to the subcontractor, and the subcontractor failed to pay Trane for the equipment.
The facts bearing on the issue whether Trane was doing business in the State of Mississippi in violation of section 79-3-247, Mississippi Code Annotated (1972), are as follows: Trane is a Wisconsin corporation. It has not qualified to do business in the State of Mississippi but sells about one million dollars worth of its manufactured equipment in the State of Mississippi annually. Its business in Mississippi is conducted from three franchised sales offices, described by Trane in its answer to interrogatories as "Trane Sales Offices." The northern counties of Mississippi are assigned to the Memphis office; a few counties in the southern part of the state are assigned to the New Orleans office; and the balance of the State of Mississippi is served from the Trane Sales Office in Jackson. The Memphis sales office operates as a corporation, Wilson Trane Service Agency, Inc.
*748 The testimony showed that the other franchised offices operate substantially the same as the Memphis office, and it may be inferred from this statement that the Jackson and New Orleans offices are also operated as separate corporations. The ownership of the stock of these corporations is not shown in the record, but there is nothing to show that Trane owns any of their corporate stock. Each of these franchised offices operates under a contract designated as "Trane Territorial Franchise Agreement."
The franchise agreement grants to the franchise holder an exclusive, nonassignable franchise to act as agent for the sale of Trane products at prices to be determined by Trane. Trane reserves the right to exclude from the franchise holder the right to sell certain of its products, and the agreement designates the territory where the products may be sold. The term of the agreement is indeterminate except that it may be terminated by either party upon thirty days notice. All proposals for the sale of Trane products are submitted by the franchise holder to Trane at its home office in La Crosse, Wisconsin, for approval and acceptance. Sales are made directly by Trane to the customer who is extended credit by Trane. Trane agrees to pay the franchise holder commissions in accordance with Trane's price charts and commission schedules. Trane reserves the right at its sole discretion to set forth rules for the division of commissions on sales involving more than one franchise holder or sales representative. Commissions paid franchise holders are subject to back-charges for returned goods, bad debts, collection and other expenses, and in any dispute concerning commissions or back-charges, the decision of Trane is final.
The franchise holder shall (1) establish and maintain a business organization adequate in every way to cover the assigned territory and to serve all of the Company's customers properly; (2) aggressively promote the Company's products including any new line of products which the Company may, from time to time, introduce for sale by the franchise holder; and (3) work diligently to secure orders for the products of the Company.
"The franchise holder shall be an independent contractor and shall in no way be subject to the direction of the Company [Trane] as to the means and methods for accomplishing the sale of Company [Trane] products or in any other respect." The franchise holder agrees to maintain cash reserves in such amount as Trane shall from time to time determine. Franchise holder shall pay all commissions and all other business obligations promptly, and should business obligations not be so paid, Trane is authorized to make such payments and charge the same to franchise holder's account. The contract provides that money may be advanced to the franchise holder in the form of a draw or otherwise, and it shall be deemed owing the company and may be deducted from any payments due franchise holder. The franchise holder agrees to cooperate fully with other franchise holders in matters relating to the sale, application and service of Trane products.
Section 4(i) provides as follows:
The Franchise Holder agrees during the term of this agreement to cause its sales and service personnel to execute agreements or forms to be provided by the Company pursuant to which such personnel agree, among other things, to disclose and assign inventions conceived during the course of their work to the Company.
The agreement provides an elaborate procedure for terminating the franchise, and in the event Trane gives notice of the termination, franchise holder agrees to continue to operate the franchised agency as a going concern until the date of termination, including servicing of old accounts, development of new accounts, and incurring of normal operating expenses. Upon such termination Trane will retain a sum of money to be determined by it from commissions *749 due or to become due the franchise holder in order to cover contingencies such as back-charges and other expenses.
Gene Jones, one of the sales engineers working for Wilson Trane Service Agency out of Memphis, testified that he is one of the four engineers who serves as a sales representative in the territory employed by Wilson Trane Service Agency, Inc., which he refers to an Wilson Engineering Corporation, hereinafter called franchise holder.
Franchise holder sells Trane equipment exclusively. All air conditioning equipment is warranted by Trane for parts and labor for one year, and the compressor is warranted for parts only for five years. It is customary for the installing contractor to be responsible for the labor repairs during the first year. Franchise holder maintains service personnel to provide such service, and Trane furnishes the parts through franchise holder. Franchise holder maintains from $20,000 to $30,000 worth of parts and compressors. If a compressor goes bad and franchise holder knows that it is in warranty, it will deliver a compressor and then order another one from Trane. Jones testified that in this type of business, "We've got to have service after the sale, and our most important aspect is to have a happy customer and owner, and if the man does have a problem and has a piece of equipment that is a lemon, then we will do everything we can to make him happy and provide the parts he needs to get him back in operation." It is not unusual for something to go wrong with equipment, and part of the service provided by franchise holder is to provide engineers and professional people to make such corrections.
1. Did the trial court err in finding that Trane was transacting business in this state?
The statute is the starting point of the inquiry. Section 79-3-247, Mississippi Code Annotated (1972), provides in part as follows:
No foreign corporation transacting business in this state without a certificate of authority shall be permitted to maintain any action, suit or proceeding in any court of this state.
The statute denying access to the courts is penal in nature and must be strictly construed. S. & A. Realty Company v. Hilburn, 249 So.2d 379 (Miss. 1971). Three categories of cases require construing the phrase "transacting business": (1) taxing, (2) amenability to suit and service of process under the "long-arm" statute, and (3) barring foreign corporations from state courts for failure to meet the state's qualification requirements. These three categories have been recognized in Mississippi. See Century Brick Corporation of America v. Carroll, 247 Miss. 514, 153 So.2d 683 (1963).
The marketing within a state of the products of a foreign corporation through a local business or dealer does not in itself constitute transacting business in the state by the foreign corporation. If, however, the local dealer is not in fact an independent business but is so far under the control of the foreign company that it is a mere conduit for the passage of products from the manufacturer to the consumer, then the foreign corporation may be regarded as transacting business in the state. The degree of control over the local business and whether the contract in substance establishes the relationship of seller and purchaser or principal and agent are important factors. If the contract establishes a principal and agent relationship, the foreign corporation is regarded as doing business in the state, but if its effect is to establish the relationship of buyer and seller, it is not so regarded. 36 Am.Jur.2d, Foreign Corporations § 363 (1968).
In Century Brick Corporation of America v. Carroll, 247 Miss. 514, 153 So.2d 683 (1963), the question was the amenability of the foreign corporation to suit in Mississippi, and the Court held that the foreign *750 corporation's operation through a franchise license constituted transacting business in this state.
We hold that Trane was transacting business in Mississippi. The franchise agreement and the oral testimony clearly reveal that the local franchise agents are not independent businesses and are merely tightly controlled agencies of Trane for the distribution of Trane's products. The arrangements and activities do not result in establishing the relationship of seller and purchaser. The franchised holder does not pretend to purchase anything except parts. The relationship is for all practical purposes that of principal and agent, or more accurately, the establishment of a branch office of Trane for the sale and service of its products. Every significant aspect of the franchise holder's business is either controlled or subject to control by Trane.
Applying the rule of strict construction of a penal statute, we hold the trial court correctly held that Trane was doing business in Mississippi.
2. Were the activities of Trane in this state such as to bring them within the statutory exceptions?
Section 79-3-211(d) and (e), Mississippi Code Annotated (1972), provides:
Without excluding other activities which may not constitute transacting business in this state, a foreign corporation shall not be considered to be transacting business is this state, for the purposes of this chapter, by reason of carrying on in this state any one or more of the following activities: ....
(d) Soliciting or procuring orders, whether by mail or through employees or agents or otherwise, where such orders require acceptance without this state before becoming binding contracts.
(e) Transacting any business in interstate commerce.
We hold that if Trane is transacting business within the state by maintaining therein, as at Jackson, an active branch sales and service business for conducting sales of its products and servicing its equipment under its warranty, after sale, then it is immaterial whether the business is "in interstate commerce," unless it is shown that an undue burden was placed on the interstate business. If a foreign corporation engages in business in the state, it must bear its share of responsibilities as a corporate citizen the same as domestic corporations.
As to subsection (d) of the quoted statute, if the only activity of Trane in the State of Mississippi consisted of soliciting orders requiring acceptance in Wisconsin, then it would be exempt from the penalties of the statute. But Trane's activity in the state is far more than the mere solicitation of orders. As shown in the statement of facts, Trane, operating through a franchise holder totally dominated by Trane, conducts at Jackson a sales and service office for the promotion of Trane's business by furnishing engineering service to prospective customers, conducting sales, extending credit to its customers, servicing its equipment upon its warranty, and maintaining a stock of parts and compressors. We hold the exception does not apply.
Affirmed.
PATTERSON, INZER, SMITH and SUGG, JJ., concur.