**CHROMCRAFT CORPORATION,
Plaintiff,**

v.

**MIROX, S. A., a Belgium Corporation.**

**No. DC 76–120–S.**

United States District Court,
N. D. Mississippi,
Delta Division.

Aug. 30, 1977.

---

W. Timothy Jones, Charles P. Adams, Jr., Brunini, Grantham, Grower & Hewes, Jackson, Miss., Allan M. Brown, Amsterdam, N. Y., for plaintiff.

Erskine W. Wells, J. Jerry Langford, Wells, Wells, Marble & Hurst, Jackson, Miss., for defendant.

## MEMORANDUM OF DECISION

ORMA R. SMITH, District Judge.

■ The plaintiff Chromcraft Corporation (Chromcraft) is a New York corporation qualified to do and doing business in Mississippi. Chromcraft has its principal place of business in the City of Senatobia, Tate County, Mississippi and is, therefore, a Mississippi citizen within the purview of 28 U.S.C. § 1332(c).

Defendant Mirox, S.A., is a Belgium Corporation (Mirox) and a subsidiary of Glaverbel, S.A. During the period of time involved in the action sub judice, Mirox was a societe anonyme organized and existing under the laws of Belgium.

Except for its involvement with Chromcraft in the matters giving rise to this litigation, Mirox has not had a connection of any kind or character with the State of Mississippi or any of its citizens.

Beginning in late 1971, Mirox began selling Chromcraft glass tabletops (hereafter "glass") for use in manufacturing at Chromcraft's Senatobia plant. Mirox continued to sell glass to Chromcraft on a regular basis for the use just mentioned from that time until the dispute arose which is the subject matter of the action sub judice. When it became known to Mirox in 1972 that Chromcraft was seeking a supplier of a new amber-colored glass, Mirox offered to produce for Chromcraft a glass in the desired color by a new process. After Mirox furnished Chromcraft with samples of the glass, Chromcraft placed orders with Mirox for the glass it needed.

Chromcraft received the first shipment of the amber-colored glass in early 1973 and discovered that a number of the pieces were below specifications. The problem was satisfactorily resolved by the parties, and the next several shipments were received without incident.

In April, 1974, Chromcraft discovered that a large number of the pieces of amber-colored glass in a shipment were defective and below specifications. Two shipments were returned to Mirox and Chromcraft was given credit for the same. There were other and later shipments, however, which Chromcraft claimed contained defective glass. Mirox refused to accept the return of this glass.

Chromcraft filed this breach-of-contract action against Mirox and secured service of process on Mirox through the Secretary of State pursuant to Mississippi's long-arm statute, Miss.Code Ann. § 13–3–57 (1972). Mirox, by appropriate pleadings, has now questioned the validity of such service and seeks a dismissal of the action, pursuant to Fed.R.Civ.P. 12(b)(2).

The parties have submitted the matter to the court on the pleadings and affidavits. The parties have presented very able arguments in excellent memoranda filed with the court.

The court must determine whether, under the facts as reflected in the record, the reach of the statute is long enough to fix in personam jurisdiction on Mirox and thus give this court jurisdiction of the action. The question is not without difficulty of solution.

■ Mississippi's long-arm statute, Miss.Code Ann. § 13–3–57 (1972), was amended by the 1964 Legislature (effective July 1, 1964). The force of the amended statute is to extend its coverage to nonresidents who shall commit a tort in whole or in part in the state against a resident of the state, or who shall make a contract with a resident of the state to be performed in whole or in part by any party in the state.[1]

The Mississippi Supreme Court has consistently held that the reach of Section 13–3–57 is limited only by the minimum contacts-fairness test established by the Supreme Court of the United States in *International Shoe Co. v. Washington*, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95, 102 (1945),

1. Chromcraft is a New York corporation qualified and authorized by Mississippi statutes to do business in Mississippi. Chromcraft is entitled to the status of "a resident of this state" contemplated by Miss.Code Ann. § 13–3–57 (1972). *C. H. Leavell & Company v. Doster*, 211 So.2d 813, 814 (Miss.1968).

and followed in numerous other cases including *McGee v. International Life Ins. Co.*, 355 U.S. 220, 78 S.Ct. 199, 2 L.Ed.2d 223 (1957).

In *Mladinich v. Kohn*, 250 Miss. 138, 164 So.2d 785 (1964) the distinguished late Chief Justice, then Associate Justice of the court, the Honorable W. N. Etheridge, Jr., said when commenting on the force of a prior decision of the court, *Davis-Wood Lumber Co., Inc. v. Ladner*, 210 Miss. 863, 50 So.2d 615 (1951) that "Davis-Wood adopted the minimum contacts-fairness test as the 'outer bounds' of state power under section 1437".[2] 164 So.2d at 789. The maximum reach of the statute was not involved, however, in *Davis-Wood*.

Section 13–3–57 now creates three classes of nonresident defendants who may be served with process pursuant to the statute and subjected to the in personam jurisdiction of any court in the state, federal or state. They are:

(1) Nonresidents[3] who shall do any business or perform any character of work or service in Mississippi; or

(2) Nonresidents who shall make a contract with a resident of Mississippi to be performed in whole or in part by any party in Mississippi; or

(3) Nonresidents who shall commit a tort in whole or in part in Mississippi against a resident of that state.

The cases decided prior to the 1964 amendment did not deal with the last two classes described above. *See Mladinich, supra*, where Judge Etheridge discusses a number of these cases.

Since the 1964 Amendment, this court, The United States Court of Appeals for the Fifth Circuit and the Mississippi Supreme Court have construed and applied the statute in a number of tort cases. *Edwards v. Associated Press*, 512 F.2d 258 (5th Cir. 1975), *rev'g*, 371 F.Supp. 333 (N.D.Miss.

1974); *Dawkins v. White Products Corp. of Middleville, Mich.*, 443 F.2d 589 (5th Cir. 1971), *rev'g*, 317 F.Supp. 53 (N.D.Miss.1970); *McAlpin v. James McKoane Enterprises, Inc.*, 395 F.Supp. 937 (N.D.Miss.1975); *Breedlove v. Beech Aircraft Corp.*, 334 F.Supp. 1361 (N.D.Miss.1971); *Alford v. Whitsel*, 322 F.Supp. 358 (N.D.Miss.1971); and *Smith v. Temco, Inc.*, 252 So.2d 212 (Miss.1971).

The courts have held that Section 13–3–57 is to be given a liberal and broad interpretation in order that Mississippi residents may be given a local forum in which to litigate differences with nonresidents growing out of torts committed in whole or in part by nonresidents in Mississippi and involving Mississippi residents, or growing out of contracts by nonresidents with resident citizens to be performed in whole or in part in Mississippi.

We are not here concerned with a tort case. Mirox can be held answerable to Chromcraft in damages only on the theory of a contract breach.

Chromcraft contends that a contract was made by Mirox to be performed in whole or in part in Mississippi and that for this reason Mirox can be held for the breach, if any, of the contract in the action sub judice.

The tort cases to which reference is made above demonstrate that Mississippi has adopted the "single tort" provision of Section 13–3–57 and have affirmed in personam jurisdiction as to nonresident defendants based upon the "single tort" theory. The trend of the Mississippi decisions is to give the broadest and most liberal interpretation to the statute in question. The court is of the opinion that should the occasion arise the Mississippi Supreme Court will adopt a "single contract" theory for implementing the statute. Being Erie-bound[4] the court has concluded that if any part of the contract between Chromcraft and Mi-

---

2. Section 1437 is the predecessor section to Miss.Code Ann. § 13–3–57 (1972).

3. This term includes a nonresident person, firm, general or limited partnership, or any foreign or other corporation not qualified under

the constitution and laws of Mississippi as to doing business therein.

4. *Erie Railroad Co. v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938).

rox was to be performed by either party in Mississippi, Mirox can be held to answer and defend the action sub judice. Chief Judge William C. Keady reached the same conclusion in *Kaydee Metal Products Corp. v. Sintex Mach. Tool Mfg. Corp.*, 342 F.Supp. 902 (N.D.Miss.1972). This court is inclined to follow *Kaydee* as a precedent.

The statute expressly provides that process may be served pursuant thereto on the nonresident defendant "who shall make a contract with a resident of this state *to be performed in whole or in part by any party in this state.*" (emphasis supplied.) The parties concede that a contract was made by Mirox with Chromcraft. The only question for determination for the court is whether any part of the contract was to be performed in Mississippi by either Chromcraft or Mirox. If so, then the service of process is valid and the court has in personam jurisdiction over Mirox.

We are not here concerned with business transactions between Chromcraft and Mirox which occurred prior to the amber-colored glass contract which is the subject matter of this litigation. Chromcraft relies upon the so-called "single contract" provision of the statute to support its claim that Mirox is amenable to suit in the action sub judice. There is some conflict in the record as to the facts pre-dating the amber-colored glass matter but these need not be discussed here.

The record reflects that Chromcraft was seeking in 1972 an amber-colored glass to use in manufacturing its product. This desire of Chromcraft was brought to the attention of Mirox. Mirox offered to produce and furnish Chromcraft an amber-colored glass manufactured by Mirox through a new process developed by Mirox.

A sample of the glass was delivered to Chromcraft at its Senatobia plant by Mirox for Chromcraft's inspection. After inspecting the glass and finding it to be satisfactory, Chromcraft began to purchase the glass from Mirox. The first order was placed in October 1972. There were several orders placed and shipments made of the glass after the initial order. Each transaction

was initiated, made and completed in the following manner.

When in need of glass, Chromcraft would call or telex Mirox for a price quotation on the size and amount of glass required. The call or telex originated in Mississippi at Chromcraft's Senatobia plant. Mirox received the call or telex at its Belgium office. After receiving the inquiry Mirox would call or telex Chromcraft a price for the glass requested. The price quotation originated in Belgium and was received by Chromcraft in Mississippi. Chromcraft, relying upon the price quotation from Mirox, would forward its order for the glass from its Mississippi office to Mirox at its Belgium plant. Mirox would then acknowledge receipt of the order by issuing from its Belgium office and forwarding to Chromcraft at its Mississippi plant² the standard form of conformation or acknowledgment used by Mirox for such purposes. The confirmation-acknowledgment form contained, on the front thereof, the usual invoice for the goods shipped. The front part of the form also contained a statement in print large enough to draw the attention of anyone who might examine the document that the conformation-invoice was "subject to general conditions on back". These pertinent conditions were printed on the back of the form:

8. Our invoices are payable in our offices. We do not forego this right nor its judicial consequences when accepting checks or other remittances or when drawing drafts on our customers.

11. All contracts are executed according to Belgian Laws. Any dispute shall be referred exclusively to the competent Courts of Justice in Head Office district.

Payments for glass received were made by check or other remittance, directly to Mirox at its Belgium office. The payments originated in Mississippi at Chromcraft's Senatobia plant.

The glass was sold C.I.F., Norfolk, Virginia and was shipped in large crates which were not opened until transported from Norfolk, Virginia, to Senatobia, Mississippi. The parties were aware of the fact that the

glass was to be used by Chromcraft in its manufacturing process at its Senatobia, Mississippi, plant. It is reasonable to infer that Mirox knew or should have known that it would be impracticable for Chromcraft to inspect the glass shipment at Norfolk before transportation to Mississippi. A reference to *The Law of Admiralty*, Second Edition by Gilmore and Black, at pages 106–7 reveals the following:

> A C.I.F. price quotation includes the invoice price of the goods plus insurance and freight to named port of designation. The seller completes his performance by procuring the necessary documents (bill of lading, insurance policy or certificate and invoice plus any others that may be called for by the particular contract) and forwarding them to the buyer.

Mirox contends that it has not had any Mississippi contacts in connection with the contract in question which warrant subjecting it to the reach of the statute. Mirox contends that all sales contracts with Chromcraft were made elsewhere than in Mississippi, either at trade fairs held in the United States at locations outside of Mississippi, during visits of Chromcraft employees to Mirox in Belgium, or by correspondence.

Mirox admits that its officers visited Chromcraft's Mississippi plant on three occasions. A visit in March, 1972, by Mr. Michael Knoops, a visit on September 19, 1974, by Mr. M. Derème solely to examine glass allegedly rejected by Chromcraft as defective, and a visit on February 26, 1975, by Mr. Andre Knoops exclusively to examine allegedly defective glass.

Directors of Mirox have stated in affidavits filed with the court that Mirox was not bound to deliver merchandise ordered by Chromcraft until Mirox had accepted the order in Belgium which fact was known to the officers and employees of Chromcraft, and that the sales by Mirox to Chromcraft were not conditional or inspections and/or acceptance. The affidavits also contain the statements that Chromcraft's orders were received and accepted only in Belgium; that payments by Chromcraft were made only when received by Mirox in Belgium;

and that all merchandise sold by Mirox to Chromcraft was sold C.I.F. Norfolk, Virginia.

It is, therefore, argued by Mirox, that the contract with Chromcraft on account of which amber-colored glass was to be supplied Chromcraft for use in its manufactured product in Mississippi was not a contract to be performed in whole or in part by any party in Mississippi. Mirox concludes from this line of reasoning that the statute is not here applicable.

On the other side of the coin, Chromcraft argues that the intent of the statute is to make a nonresident amenable to suit in a Mississippi forum for the breach of a contract which has been made by the nonresident with a Mississippi citizen to be performed in whole or in part by either party in Mississippi, and that such is the case in the action sub judice.

Leaving out of consideration prior dealings between Mirox and Chromcraft, Chromcraft contends that the performance of the contract in question necessitated numerous acts by both parties within Mississippi sufficient to comply with the "Minimal Contacts" doctrine.

■ The court must bear in mind that the statute is intended to extend to any contract, as defined therein, which shall be performed in whole or in part by *any party* in the state. The statute is brought into play in the action sub judice if any part of the contract is to be performed in Mississippi by either of the parties, i. e., Chromcraft or Mirox.

Let us examine the undisputed facts as reflected by the record to determine whether any part of the contract was to be performed in Mississippi by either Mirox or Chromcraft.

After obtaining knowledge that Chromcraft was interested in acquiring amber-colored glass for use in the manufacturing process at its Senatobia plant, Mirox offered to supply the glass requested. A glass sample was submitted to Chromcraft for its inspection at Chromcraft's Mississippi plant. This act of furnishing the sample

was performed by Mirox in anticipation of making a contract to sell Chromcraft the glass which Chromcraft needed. Being satisfied with the sample of glass, Chromcraft originated in its Mississippi plant a request to Mirox for a price quotation. The quotation from Mirox, originating in Belgium, was made known to Chromcraft in Mississippi. In accepting the price quotation, Chromcraft originated in Mississippi an order for the glass which was transmitted to Mirox in Belgium. The confirmation of the order and the invoice denoting acceptance by Mirox originated in Belgium but was delivered to Chromcraft in Mississippi. Delivery of the merchandise was made to Chromcraft's carrier at dockside in Norfolk, Virginia, from where the glass was transported in the original package to Chromcraft's Mississippi plant. The shipment was there uncrated and the defective glass detected. Payment for the glass originated in Mississippi when Chromcraft issued its remittance for delivery to Mirox in Belgium. The economic loss occasioned by the alleged breach of the contract was suffered by Chromcraft in Mississippi.

■ Under these circumstances the court holds that the contract between Mirox and Chromcraft comes within the coverage of the contract provision of Mississippi's long-arm statute.

■ The court has no difficulty in reaching the conclusion that the due process rights of Mirox under the Fourteenth Amendment to the Constitution of the United States are not violated or abridged by holding Mirox amenable to the process and jurisdiction of this court.

The Supreme Court in *McGee v. International Life Ins. Co., supra*, held service of process under California's long-arm statute valid and not violative of the due process clause of the Fourteenth Amendment where defendant's only contact with California was the offer by mail of a certificate of life insurance to a California resident to take the place of a policy held by him previously issued by a company whose obligations defendant had agreed to assume, the acceptance of the offer by the Califor-

nia resident and of payment of premium thereon until death ensued. In holding the service of process valid, the *McGee* court said "[i]t is sufficient for purposes of due process that the suit was based on a contract which had substantial connection with that state." 355 U.S. at 223, 78 S.Ct. at 201, 2 L.Ed.2d at 226.

The contract here in question had a substantial connection with Mississippi. The amber-colored glass was sold to Chromcraft for a definite purpose—that of being incorporated into a manufactured product at Chromcraft's Mississippi plant. The breach of the contract, if any, resulted in economic loss to Chromcraft in Mississippi.

The court finds that the motion to dismiss is not well taken and should be overruled. The court does not intend by its decision herein to indicate any opinion as to the merits of the case. The issues are to be formed by pleadings yet to be filed. The court's decision is addressed solely to the motion at hand.

An appropriate order will be entered by the court.