**REED–JOSEPH COMPANY, Plaintiff,**

v.

**Austin J. DeCOSTER, d/b/a DeCoster Egg Farms, Defendant.**

**No. GC 77–144–S.**

United States District Court,
N. D. Mississippi,
Greenville Division.

June 30, 1978.

Lawrence D. Wade, Campbell & DeLong, Greenville, Miss., for plaintiff.

Jerome C. Hafter, Lake, Tindall, Hunger & Thackston, Greenville, Miss., for defendant.

## MEMORANDUM OF DECISION

ORMA R. SMITH, District Judge.

The plaintiff in this action is Reed-Joseph Company (hereafter "Reed-Joseph"). Plaintiff is a Delaware corporation with its principal place of business in Greenville, Washington County, Mississippi, where it operates a factory in which it manufactures grain bins and accessories useful in the operation of egg farms and other similar type operations.

Defendant is Austin J. DeCoster (hereafter "DeCoster") doing business as The DeCoster Egg Farms. DeCoster is a citizen of the State of Maine and resides in Turner, County of Androscroggin. DeCoster is a farmer and produces eggs on his farm at the place of his residence and elsewhere.

Reed-Joseph brings this action to collect an open account claiming DeCoster owes it $88,781.09. Service of process was obtained upon DeCoster pursuant to Mississippi's Long-Arm Statute, Miss.Code Ann. § 13–3–57 (1972). This action is before the court on DeCoster's motion to dismiss or for change of venue pursuant to 28 U.S.C. § 1404(a),[1]

to the Maine United States District Court, the district of DeCoster's domicile.

The affidavits presented by the parties reflect the following facts. In 1976, DeCoster contacted Reed-Joseph regarding the purchase of storage bins and related equipment. Reed-Joseph prepared for DeCoster and submitted to him drawings, engineering specifications and quotations for the grain system. The system was manufactured at the Reed-Joseph plant in Greenville and delivered to DeCoster at his farm or farms at or near the place of his residence. DeCoster paid for the original system. The negotiations for the manufacture, sale and delivery of the original system, were conducted principally over long-distance telephone. Neither DeCoster or his representative visited Mississippi during the period of negotiations or in connection with the sale and/or delivery of the system.

DeCoster contemplated the purchase of additions to the system purchased from Reed-Joseph and at DeCoster's request drawings were prepared for such additions. Additional equipment was ordered by DeCoster and shipped to him in Maine. The cost of the additional equipment is the subject matter of this action. There were numerous telephonic contacts between Reed-Joseph and DeCoster, the participants representing Reed-Joseph being in Greenville, Mississippi, and those representing DeCoster in Turner, Maine. The purchase price for the additions to the original system was payable at the office of Reed-Joseph in Greenville, Mississippi.

Reed-Joseph claims that on two occasions in September, 1977, a representative of DeCoster called the Reed-Joseph Greenville, Mississippi, plant from the Holiday Inn in Greenville, Mississippi, requesting documents concerning the additions to the original system which are the subject of this litigation. Practically all of the purchases had been made by that time and such instances, if any, in the opinion of the court, are not relevant to the issues herein. De-

---

1. 28 U.S.C. § 1404(a) provides "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought."

Coster states that he has never had any contact with Mississippi except to pass through the state on one occasion while on vacation.

DeCoster contends that he has not had sufficient contact with Mississippi to justify personal service upon him under the Mississippi Long-Arm Statute and to subject him to the in personam jurisdiction of the court under the facts here present would offend the " 'traditional notions of fair play and substantial justice' " concept of *International Shoe Co. v. Washington*, 326 U.S. 310, at 316, 66 S.Ct. 154, at 158, 90 L.Ed. 95, at 102 (1945). While the Mississippi Supreme Court and the federal courts sitting in Mississippi, as well as the United States Court of Appeals for the Fifth Circuit have extended the reach of the Mississippi Long-Arm Statute, the validity of service under conditions similar to those shown to exist in the action sub judice has not been recognized by any of these courts insofar as the court has been able to ascertain.[2]

Here, the only fact which could arguably justify in personam jurisdiction under the statute is that the system was fabricated in Mississippi according to plans and specifications especially prepared in Mississippi by Reed-Joseph to suit the needs of defendant. This activity was performed by Reed-Joseph in order to place itself in a position to make the sale of its system to its Maine customer. The sale of the system was negotiated by telephonic means and correspondence. DeCoster was never present in Mississippi at any time and had no other business connections within the state.

The contacts that DeCoster had with Mississippi are similar to the contacts the defendant had with the State of Texas in *Barnstone v. Congregation AM Echad*, 574 F.2d 286, (1978) where the Fifth Circuit upheld the district court's adoption of the magistrate's recommendation for dismissal of a non-resident defendant on the ground that the defendant did not have sufficient contacts to support in personam jurisdiction under the Texas' Long-Arm Statute. The plaintiff in *Barnstone* was a Texas architect who brought the action in a Texas Federal District Court against a non-profit religious corporation registered under the State of Maine. Plaintiff brought the action to collect fees·allegedly owed for work he had performed for defendant. Defendant had asked plaintiff to make a presentation and be considered for receiving an architectural commission. No officer, agent, or other representative of defendant ever came to Texas. Plaintiff went to Maine, made his presentation and was awarded the commission. Plaintiff performed all drawings, sketches and other work at his office in Texas and was to supervise the construction in Maine. All negotiations were by telephone or mail. The only evidence of the parties' agreement was a standard form contract issued by the American Institute of Architect which had been signed by plaintiff but not by defendant. One provision of this contract provided that the agreement was to be governed by the law of the principal place of business of the architect, which in this case was the State of Texas. Plaintiff procured a Maine architect's license so that he could perform architectural services in that state.

Under the Texas Long-Arm Statute, a person is considered to be "doing business" if he "has entered into a contract by mail with a Texas resident that is to be performed in part in the State of Texas". 574 F.2d at 288. The plaintiff argued that since all drawings and sketches were done in the State of Texas and all correspondence including the contract was sent to his office in Texas and since the contract provided that the agreement was to be governed by the law of Texas, there existed sufficient contacts with the State of Texas to support in personam jurisdiction under the Texas

---

2. *See e. g., Dawkins v. White Products Corp.*, 443 F.2d 589 (5th Cir. 1971); *R. Clinton Construction Co. v. Bryant & Reaves, Inc.*, 442 F.Supp. 838, 849–50 (N.D.Miss.1977); *Edwards v. Associated Press*, 371 F.Supp. 333 (N.D.Miss. 1974), *rev'd and remanded*, 512 F.2d 258 (5th Cir. 1975); *Breedlove v. Beech Aircraft Corp.*, 334 F.Supp. 1361 (N.S.Miss.1971); *Shackelford v. Central Bank of Mississippi*, 354 So.2d 253 (Miss.1978); *Trane Co. v. Taylor*, 295 So.2d 746 (Miss.1974); *Smith v. Temco, Inc.*, 252 So.2d 212 (Miss.1971).

Long-Arm Statute. The Fifth Circuit affirmed the magistrate's recommendation which rejected plaintiff's argument and which stated:

> Assuming that plaintiff's endeavor in making the drawings, renderings and models in Texas constitutes partial performance, it is the opinion of the undersigned that the defendant's contacts with the State are insufficient to satisfy the *Hanson* and *O'Brien* tests of purposeful activity by defendant within the State of Texas. . . . It is well settled that the unilateral activity of those who claim some relationship with a non-resident defendant cannot satisfy the requirement of contact with the forum state. *Hanson v. Denckla, supra,* 357 U.S. [235] at p. 253, 78 S.Ct. 1228, [2 L.Ed.2d 1283]. After careful review of the pleadings and affidavits, the undersigned is of the opinion that defendant has neither transacted any purposeful activity within the State of Texas nor has it invoked the benefits and protection of the laws of Texas and thus fails to meet the tests for jurisdiction as described in *O'Brien, supra.*[3]

In *Holvitz v. Norfleet-Ashley, Inc.,* 369 F.Supp. 394 (N.D.Miss.1973), this court said:

> Plaintiffs contend that Diamond Steel has been and is now doing business in Mississippi without having qualified as a foreign corporation to do so. For this reason plaintiffs contend that Diamond Steel is subject to process under Mississippi's long arm statute. The law is clear that process served pursuant to Section 13–3–57 is not valid or effective to subject the non-resident defendant to in personam jurisdiction unless the cause of action arises from, or is connected with, the purposeful consummation of some transaction or performance of some act within the state by such non-resident defendant. *Mladinich v. Kohn,* 250 Miss. 138, 164 So.2d 785 (1964); *Republic-Transcon Industries, Inc. v. Templeton,* 253 Miss. 132, 175 So.2d 185 (1965); *Breckenridge v. Time, Inc.,* 253 Miss. 835, 179 So.2d 781 (1975); *Smith v. Barker,* 306 F.Supp. 1173 (N.D.Miss.1968).

369 F.Supp. at 396 (footnote omitted).

■ It appears to the court that this action is really for the purpose of collecting the amount allegedly due on the sale of products manufactured in Mississippi and sold to a non-resident buyer on open account. The court is of the opinion that the motion to dismiss on account of the lack of in personam jurisdiction over the defendant is well taken. However, since the motion to dismiss is accompanied by a motion to transfer, the court finds that it is authorized to transfer the action to the United States District Court of Maine, being the district in which the defendant is a citizen, even though in personam jurisdiction does not exist.

As this court said in *Haire v. Miller,* 447 F.Supp. 57 (N.D.Miss.1977):

> The court's ruling that it lacks personal jurisdiction over the defendants does not automatically moot plaintiff's motion to transfer. A court having subject matter jurisdiction, as this court does, but lacking personal jurisdiction over the defendant, still has authority under 28 U.S.C.

---

**3.** The *Hanson* test referred to is found in *Hanson v. Denckla,* 357 U.S. 235, 253, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958). The *O'Brien* test is found in *O'Brien v. Lanpar Co.,* 399 S.W.2d 340 (Tex.1966), where the Supreme Court of Texas presents three basic factors necessary for jurisdiction over a non-resident defendant:

(1) The non-resident defendant or foreign corporation must purposely do some act or consummate some transaction in the forum state,

(2) the cause of action must arise from, or be connected with, such act or transaction, and

(3) The assumption of jurisdiction by the forum state must not offend traditional notions of fair play and substantial justice, consideration being given to the quality, nature and extent of the activity in the forum state, the relative convenience of the parties, the benefits and protection of the laws of the forum state afforded the respective parties, and the basic equities of the situation.

399 S.W.2d at 342.

In *Mladinich v. Kohn,* 250 Miss. 138, 164 So.2d 785, 790 (1964), the Mississippi Supreme Court quoting from *Tyee Constr. Co. v. Dulien Steel Products, Inc.,* 62 Wash.2d 106, 381 P.2d 245, 251 (1963), set forth and adopted the identical three factors.

§ 1404(a) or 28 U.S.C. § 1406(a) to order a transfer to another district. *Goldlawr, Inc. v. Heiman*, 369 U.S. 463, 466, 82 S.Ct. 913, 8 L.Ed.2d 39 (1962) (transfer under Section 1406(a)); *Koehring Co. v. Hyde Construction Co.*, 324 F.2d 295, 297–98 (5th Cir. 1963) (transfer under Section 1404(a)).

447 F.Supp. at 59.

Defendant moves to transfer the case to the district of his residence for the convenience of the parties and witnesses, and in the interest of justice, for which provision is made in section 1404(a), *supra*. In support of his position, defendant has submitted an affidavit of his Maine counsel in which it is shown that upon the trial of the action, in order to fairly present the claims and defenses of DeCoster, four of DeCoster's employees who live in Maine, as well as De-Coster himself, will be called upon to testify. Additionally, it is shown that the grain system has been installed in and is a part of the equipment used by DeCoster in the operation of his egg farms. Should it become necessary to decide the issues with reference to the useability or fitness of the bins for DeCoster's use, the bins would be subject to inspection in that district.

Of course, if this case is transferred plaintiff has shown by affidavit that several of plaintiff's employees, who live in Mississippi, will have to travel to Maine in order to testify.

However, since the court finds that in personam jurisdiction cannot be obtained upon DeCoster in Mississippi and that the motion to dismiss would be in order were it not for the fact that the case could be transferred, the court feels that under the circumstances, a transfer is proper.

Accordingly, in the interest of justice and for the convenience of the parties, the court will order the action sub judice transferred to the United States District Court of Maine.