**F.L. CAPPAERT and Marilynn Cappaert d/b/a Cappaert Enterprises, Plaintiffs,**

v.

**PREFERRED EQUITIES CORPORATION, Defendant.**

**Civ. A. No. W84–0169(B).**

United States District Court, S.D. Mississippi, W.D.

July 15, 1985.

---

Wren C. Way, Way & Field, Vicksburg, Miss., for plaintiffs.

Edley H. Jones, III, Jeffrey R. King, Ward, Martin, Terry & King, Vicksburg, Miss., for defendant.

## MEMORANDUM OPINION AND ORDER

BARBOUR, District Judge.

This matter is before the Court upon the Motion of Defendant, Preferred Equities Corporation ("PEC"), to Dismiss this action for lack of in personam jurisdiction.

## FACTS

According to the Affidavit of Plaintiff, F.L. Cappaert, submitted in response to the Motion of PEC to Dismiss, in late 1977, Plaintiff, Cappaert Enterprises, a Mississippi partnership, composed of Mississippi residents, desired to sell certain real property owned by it in Nevada. As a result, two Nevada realtors were retained to locate prospective buyers interested in purchasing the property on a cash basis. The Nevada realtors contacted PEC which expressed an interest in purchasing the property on the basis of owner-financing. Negotiations then commenced between PEC in Nevada and Plaintiffs' attorney in Mississippi by telephone and by mail. Additionally, Plaintiffs' attorney also made two trips to Nevada, one to discuss the terms of the transaction and to review the draft documents and the other to consummate the transaction. The documents were executed by Plaintiffs in Mississippi and delivered to PEC in Nevada by the Plaintiff's attorney.

As part of the agreement, the parties agreed that the purchase of the property would be secured by the assignment of land sales contracts from PEC to Plaintiffs. The contracts were held in trust pursuant to a trust agreement executed by PEC in 1970, the trustee of which was a California bank. PEC assigned to Plaintiffs all of its rights as beneficiary under the trust.

According to the Affidavit of James L. Zemelman, Secretary and General Counsel for PEC, who was not personally involved in the transaction, an escrow was opened in Nevada for deposit of all documents comprising the parties' agreement, including the promissory note and security agreement executed by the parties. All payments under the promissory note were made by the trustee bank of PEC located in California to a Nevada bank to whom the Plaintiffs had assigned the promissory note. Thus, no payments were made by PEC to Plaintiffs in Mississippi. Finally, Zemelman notes that the promissory note and security agreement state that "this agreement and the rights of the parties thereunder are governed by the Laws of the State of Nevada."

Several months after consummation of the agreement, Plaintiffs wrote PEC concerning an alleged default under the terms of the security agreement. Plaintiffs claim that PEC violated the terms of the security agreement by swapping the land sales contracts pledged as collateral to Plaintiffs for land deeds of trust. Correspondence ensued between the parties in Mississippi and Nevada concerning the alleged default.

According to the security agreement, upon default, the borrower or "other person in possession" of the collateral was required to assemble the collateral which

Plaintiffs claim constitutes personal property. The collateral was then to be made available to Plaintiffs at a place convenient to them. Plaintiffs designated the collateral be sent to them in Mississippi.

Plaintiffs allege that the provision in the security agreement requiring delivery of the collateral to a convenient place, with Mississippi being subsequently designated, constitutes performance of a contract within Mississippi. PEC notes that, pursuant to the terms of the trust agreement under which PEC has assigned its interest in the land sales contracts to Plaintiffs, the Plaintiffs, in the event of a default by PEC, would deal directly with the trustee holding the collateral concerning the assembly and delivery of the collateral and not with PEC.

### LAW

PEC maintains that this action should be dismissed since it made no "contract with a resident of this state to be performed in whole or in part by any party in this state" as required by the Mississippi long arm statute, *Miss.Code Ann.* § 13–3–57 (Supp. 1984), and since it has no other contacts with Mississippi upon which this Court could base the exercise of in personam jurisdiction over it. This Court agrees.

The transaction for the sale of the Plaintiffs' Nevada property took place in Nevada with the exception of correspondence and telephone calls between the parties in their respective states before and after the sale. Moreover, any delivery of the collateral to Plaintiffs in Mississippi upon default would entail discussions between Plaintiffs and the trustee bank—not PEC. The courts, which have exercised jurisdiction over a non-resident defendant on the basis of a contract to be performed in whole or in part by either party in Mississippi have required more activity in Mississippi than is present here. *See, e.g., Murray v. Huggers Manufacturing, Inc.*, 398 So.2d 1323 (Miss.1981) (non-resident defendant who shipped goods to various businesses in Mississippi subject to jurisdiction); *Miller v. Glendale Equipment & Supply Company*, 344 So.2d 736 (Miss.

1977) (non-resident defendant who delivered goods to Mississippi pursuant to contract which provided that it be accepted in Mississippi subject to jurisdiction).

This Court finds *Reed-Joseph Company v. DeCoster*, 461 F.Supp. 748 (N.D.Miss. 1978), dispositive of this case. In *Reed-Joseph*, Reed-Joseph sued DeCoster to collect on an open account. DeCoster, a resident of Maine, moved to dismiss the suit for lack of in personam jurisdiction.

According to the affidavits of the parties, DeCoster contacted Reed-Joseph regarding the purchase of storage bins and other equipment. In response, Reed-Joseph prepared plans and specifications and submitted its quotation to DeCoster. Thereafter, an agreement was reached and Reed-Joseph manufactured the equipment and shipped it to DeCoster in Maine. Negotiations for the manufacture, sale and delivery of the equipment were primarily conducted by long-distance telephone calls. Neither DeCoster nor his representative visited Mississippi during negotiations nor in connection with the sale and delivery of the equipment.

Subsequently, DeCoster approached Reed-Joseph regarding the manufacture of additional equipment. Again, Reed-Joseph prepared plans and specifications for the additional equipment, manufactured it and shipped it to DeCoster in Maine. Negotiations for this additional equipment were also conducted by long-distance telephone calls. Payment for the additional equipment, which was the subject of the suit, was to be made by DeCoster in Mississippi.

Reed-Joseph claimed that DeCoster's representative visited Mississippi on two occasions and called Reed-Joseph regarding the documents for the additional equipment. The Court noted that the equipment had already been purchased and that these subsequent trips were, therefore, irrelevant to the issue of jurisdiction.

The Court determined that DeCoster was not subject to jurisdiction in Mississippi since

... the only fact that which could arguably justify in personam jurisdiction ... is that the system was fabricated in Mississippi according to plans and specifications especially prepared in Mississippi by Reed-Joseph.... This activity was performed by Reed-Joseph in order to place itself in a position to make the sale of its system to its Maine customer. The sale of the system was negotiated by telephonic means and correspondence. DeCoster was never present in Mississippi at any time and had no other business connections within the state.

461 F.Supp. at 750.

In so ruling, the Court noted that

[i]t it well settled that the unilateral activity of those who claim some relationship with a non-resident defendant cannot satisfy the requirement of contact with the forum state.

461 F.Supp. at 751 (quoting *Barnstone v. Congregation AM Echad,* 574 F.2d 286 (5th Cir.1978) ).

Here, the only fact which could arguably justify in personam jurisdiction over PEC concerns the possible assembly and delivery of the collateral to Mississippi upon default by PEC. However, as PEC notes, any discussions concerning the assembly and delivery of the collateral to the Plaintiffs in Mississippi would transpire between Plaintiffs and the trustee bank—not PEC. All other negotiations and discussions between the parties occurred in Nevada or between Nevada and Mississippi by way of telephonic means and correspondence. The documents were executed by the parties in their respective states. The Plaintiffs' attorney made two trips to Nevada to negotiate and consummate the transaction. PEC never travelled to Mississippi and had no physical contact with Mississippi other than telephone calls and correspondence before and after the sale. Indeed, PEC did not even make payments in Mississippi. Clearly, as in *Reed-Joseph Company v. DeCoster, supra,* the unilateral activity of the Plaintiffs cannot satisfy the requirements of *Miss.Code Ann.* § 13–3–57 (Supp.1984) or due process. Accordingly, this action is dismissed without prejudice. A final judgment in accordance with this opinion is being entered this day.

PEC also filed a Motion to Strike a rebuttal brief filed by Plaintiffs in response to the reply brief of PEC submitted in support of its Motion to Dismiss. Said Motion to Strike is hereby denied.