**Zola W. RITTENHOUSE,**
**Plaintiff–Appellant,**

v.

**Edward H. MABRY, Jr., et al.,**
**Defendants–Appellees.**

No. 86–4575.

United States Court of Appeals,
Fifth Circuit.

Nov. 30, 1987.

Guthrie T. Abbott, Oxford, Miss., Ralph E. Chapman, Clarksdale, Miss., for plaintiff-appellant.

Robert L. Moore, Albert C. Harvey, Memphis, Tenn., for defendants-appellees.

Before GARZA, WILLIAMS, and GARWOOD, Circuit Judges.

GARWOOD, Circuit Judge:

The issue on appeal is whether the federal district court sitting in Mississippi had personal jurisdiction over four of the defendants in this diversity medical malpractice case. The court below dismissed the four defendants, appellees Dr. Edward H. Mabry, Memphis Radiological Professional Corporation (MRPC), Dr. Lee L. Wardlaw, and Gastroenterology Consultants, P.C., for lack of personal jurisdiction. Fed.R. Civ.P. 12(b)(2). We affirm as to Dr. Mabry and MRPC, but hold that the district court had *in personam* jurisdiction over Dr. Wardlaw and Gastroenterology Consultants, P.C.

### Facts and Proceedings Below

Plaintiff-appellant Zola W. Rittenhouse is an elderly Mississippi resident who suffered from gastrointestinal problems. In 1982, her Mississippi physician referred her to Dr. Wardlaw, who at the time practiced only in Memphis, Tennessee. During her only visit to Dr. Wardlaw, which occurred at his office in Memphis, he referred Rittenhouse to another Memphis doctor—Dr. Mabry—for further tests and told her that in preparation for those tests she should ingest a particular over-the-counter laxative and also increase her fluid intake. So

**1382**

far as the record shows, this was Dr. Wardlaw's only contact with Rittenhouse. Rittenhouse returned to her Mississippi home and did as Wardlaw directed. She does not claim any injury caused directly by drinking more fluids and taking the laxative. Gastroenterology Consultants, P.C., (Gastroenterology), is a Tennessee professional corporation of which Dr. Wardlaw is the only member.

The next day, March 17, 1982, Rittenhouse returned to Memphis, this time to the office of MRPC—a Tennessee professional corporation with about twenty doctor-members of whom one was Dr. Mabry. Under his supervision, Rittenhouse was given a barium enema at a Memphis hospital of Methodists Hospitals of Memphis. She claims that the procedure tore her colon, thus necessitating emergency surgery. Rittenhouse continued to feel the effects of this alleged negligence when she returned to Mississippi.

In June 1984, Rittenhouse sued the four appellees, as well as Methodist Hospitals of Memphis, in Mississippi state court. Defendants removed the case to the United States District Court for the Northern District of Mississippi in August 1984 and moved for dismissal on grounds that they were not amenable to *in personam* jurisdiction under the Mississippi long-arm statute, Miss. Code Ann. § 13–3–57 (1972 & Supp. 1986)—the only statute under which Rittenhouse claimed jurisdiction. On August 6, 1985, the district court, Judge Biggers, granted the motion as to all defendants except Methodist Hospitals (which is not a party to the present appeal). Rittenhouse's motion for reconsideration was denied by the district court on August 23, 1985.

Rittenhouse's motion for reconsideration of the district court's August 6, 1985 order included a request to file an amended complaint alleging jurisdiction under Mississippi's attachment statutes, Miss. Code Ann. § 11–31–1 *et seq.* (1972 & Supp.1986), a basis not originally asserted. This aspect of the motion to reconsider was not acknowledged or addressed in the district court's August 23, 1985 order overruling

the motion to reconsider. On February 24, 1986, Judge Biggers ordered the case transferred to Judge Davidson. In April 1986, a magistrate denied the motion to amend on grounds that the attachment statutes would not permit jurisdiction on the facts of this case. This order was apparently never appealed to the district court.

Rittenhouse thereafter settled with the Methodist Hospitals, and on August 4, 1986, it was dismissed from the suit by an agreed order. Rittenhouse then perfected her appeal to this Court.

**Discussion**

█ If the nonresident defendant protests the exercise of personal jurisdiction, the burden falls on plaintiff to make a *prima facie* showing that personal jurisdiction exists. *E.g., Thompson v. Chrysler Motors Corp.,* 755 F.2d 1162, 1165 (5th Cir.1985). In a federal diversity case, the federal court must apply the law of the state in which it sits. *DeMelo v. Toche Marine, Inc.,* 711 F.2d 1260, 1264 (5th Cir. 1983); *Breeland v. Hide–A–Way Lake, Inc.,* 585 F.2d 716, 719 (5th Cir.1978). If state law provides for the exercise of jurisdiction, then the court must determine whether the federal constitution also permits the judicial reach. *Smith v. DeWalt Products Corp.,* 743 F.2d 277, 278 (5th Cir.1984). We will discuss each defendant-appellee in turn.

*I. Mabry and MRPC*

Because neither Dr. Mabry nor MRPC is a domiciliary or resident of Mississippi, Rittenhouse had to demonstrate the propriety of personal jurisdiction as to these defendants under Mississippi's long-arm jurisprudence.

The Mississippi Code provides three potentially relevant bases for obtaining jurisdiction in this case: the long-arm statute, section 13–3–57, which itself states three bases for obtaining jurisdiction over a nonresident; a corporate law provision, section 79–1–27, subjecting foreign corporations doing business in Mississippi to suit there; and the attachment provisions, sections 11–

31–1 *et seq.*, providing for jurisdiction over defendants with property in Mississippi.

### A. Long–Arm Statute

In pertinent part, section 13–3–57 provides:

"Any nonresident person ... or any foreign or other corporation not qualified under the constitution and laws of this state as to doing business here, [1] who shall make a contract with a resident of this state to be performed in whole or in part by any party in this state, or [2] who shall commit a tort in whole or in part in this state against a resident of this state, or [3] who shall do any business or perform any character of work or service in this state, shall by such act or acts be deemed to be doing business in Mississippi."

According to the statute, such acts have the effect of appointing the Mississippi Secretary of State as agent for process "in any actions or proceedings accrued or accruing from such act or acts, or arising from or growing out of such contract or tort, or as an incident thereto...."

No Mississippi case has ever held that this statute is coextensive with federal due process, and so our inquiry must focus on the statute itself. *See Smith v. DeWalt Products Corp.*, 743 F.2d 277, 278 (5th Cir.1984) (refusing to consider due process issue because of lack of jurisdiction under Mississippi's long-arm statute).[1]

#### 1. Contract

■ The first basis for jurisdiction arises if the nonresident makes a contract to be performed in whole or in part in Mississippi. This contract prong does not apply on the present facts. Suits by patients against physicians are customarily brought as tort actions. This is so because the parties rarely enter formal contracts. The responsibilities of doctor to patient are imposed by law and liability results when the physician's level of care falls short of his legal duty. *See, e.g., Hall v. Hilbun*, 466 So.2d 856, 866–69 (Miss.1985). Nonetheless, we have identified no Mississippi authority to prevent us from also analyzing the relationship as contractual, at least for purposes of the long-arm statute. *See* 61 Am. Jur.2d *Physicians, Surgeons, and Other Healers* § 158, at 290–91 (1981) ("The relationship between a physician and patient may result from an express or implied contract.... [T]he voluntary acceptance of the physician-patient relationship by the affected parties creates a prima facie presumption of a contractual relationship between them."); *cf. United Companies Mortgage of Mississippi, Inc. v. Jones*, 465 So.2d 1083, 1084 (Miss.1985) (stating that an action for legal malpractice may sound in tort or contract); *Hutchinson v. Smith*, 417 So.2d 926, 927 (Miss. 1982) (same).

In some circumstances, a plaintiff in what is essentially a medical malpractice case might be able to make a *prima facie* showing of jurisdiction under the contract prong. Rittenhouse has not. She has not identified any act that she, Mabry, or MRPC performed or were to perform in Mississippi pursuant to any explicit or implicit contract. As far as the record reflects, any "contract" was entered into, performed, and, for the sake of argument, breached in Tennessee. That is where the unsuccessful procedure began and continued to its unsuccessful conclusion. The statute requires that the contract be one to be performed in whole or in part in Mississippi. "[M]erely contracting with a resident of the forum state is insufficient ... to subject the nonresident to the forum's

---

1. As explained in the text, *infra*, the pre–1964 version of the long-arm statute was narrower than the current version. The first two prongs of the statute—tort and contract—initially took effect in 1964. This Court had expressly noted that the pre–1964 version did not reach as far as permitted by due process. *Walker v. Savell*, 335 F.2d 536, 543 (5th Cir.1964); *Dawkins v. White Products Corp.*, 443 F.2d 589, 591 (5th Cir.1971). Without question, the 1964 addition of the tort and contract prongs broadened the long-arm statute considerably—but in a case construing the current version of the long-arm statute we stated, "Mississippi has not chosen to extend its jurisdiction to the limits permitted by the Constitution." *Washington v. Norton Manufacturing, Inc.*, 588 F.2d 441, 444 (5th Cir.1979), *cert. denied*, 442 U.S. 942, 99 S.Ct. 2886, 61 L.Ed.2d 313 (1979). We do not know of any intervening Mississippi case to the contrary.

jurisdiction." *Colwell Realty Investments v. Triple T Inns,* 785 F.2d 1330, 1334 (5th Cir.1986). Accordingly, Mabry and MRPC are not amenable to jurisdiction on a contract theory.[2]

## 2. Tort

■ Mabry and MRPC are not amenable under the tort prong for the same reason that prevents the exercise of jurisdiction under the contract prong: the act of alleged negligence was committed and completed in Tennessee. Although Mississippi law does not require that *all* elements of the tort occur in that state, at least some part of the tort must be committed in Mississippi. *See, e.g., Smith v. Temco,* 252 So.2d 212, 216 (Miss.1971); *Western Chain Co. v. Brownlee,* 317 So.2d 418, 421 (Miss. 1975); *Waffenschmidt v. Mackay,* 763 F.2d 711, 720 (5th Cir.1985), *cert. denied,* 474 U.S. 1056, 106 S.Ct. 794, 88 L.Ed.2d 771 (1986); *Breedlove v. Beech Aircraft Corp.,* 334 F.Supp. 1361, 1365 (D.Miss.1971). The tort is complete when the injury itself occurs, *see Smith,* 252 So.2d at 216, and so Rittenhouse's continuing pain and discomfort, suffered as a result of the injury after she returned to Mississippi, do not qualify as a tortious occurrence in Mississippi. *Cf. Estate of Portnoy v. Cessna Aircraft Co.,* 730 F.2d 286, 290 (5th Cir.1984) (commenting, in case involving Mississippi's long-arm statute, "[A] tort occurs when and where the actual injury or accident takes place, and not at the place of the economic consequences of that injury.").

## 3. Doing Business

■ The final means of asserting jurisdiction under the long-arm statute is by

showing that the nonresident defendant conducts "any business or perform[s] any character of work or service" in Mississippi. This basis for long-arm jurisdiction dates back at least to the 1942 Code. *See Davis–Wood Lumber Co. v. Ladner,* 210 Miss. 863, 50 So.2d 615, 620 (1951). By contrast, the contract and tort prongs did not take effect until 1964. *See Mladinich v. Kohn,* 250 Miss. 138, 164 So.2d 785, 789 (1984). The court in *Mladinich* was called upon to construe the pre–1964 statute and adopted a tri-partite test from *Tyee Construction Co. v. Dulien Steel Products, Inc.,* 62 Wash.2d 106, 381 P.2d 245, 245 (1963):

"(1) The nonresident defendant or foreign corporation must. purposefully do some act or consummate some transaction in the forum state; (2) the cause of action must arise from, or be connected with, such act or transaction; and (3) the assumption of jurisdiction by the forum state must not offend traditional notions of fair play and substantial justice, consideration being given to the quality, nature, and extent of the activity in the forum state, the relative convenience of the parties, the benefits and protection of the laws of the forum state afforded the respective parties, and the basic equities of the situation." *Mladinich,* 164 So.2d at 790.

Seven years later, in *Smith v. Temco,* 252 So.2d 212 (Miss.1971), the state supreme court held that the Mississippi legislature intended to "broaden the scope of the statute" by the 1964 addition of the tort and contract prongs. *Id.* at 215.

---

**2.** The facts of this case may be compared with representative examples of cases in which the contractual basis of jurisdiction has been triggered. *C.H. Leavell & Co. v. Doster,* 211 So.2d 813 (Miss.1968) (plaintiff construction contractors agreed with nonresident defendant to perform work at a NASA facility in Mississippi); *Miller v. Glendale Equipment & Supply, Inc.,* 344 So.2d 736 (Miss.1977) (Mississippian mailed check to out-of-state equipment seller for purchase of bulldozer which was delivered into Mississippi pursuant to the seller's contractual obligation to do so); *Shackelford v. Central Bank,* 354 So.2d 253 (Miss.1978) (nonresident signs loan guaranty to be performable in Missis-

sippi); *First Mississippi Nat'l Bank v. S & K Enterprises, Inc.,* 460 So.2d 839 (Miss.1984) (same). Rittenhouse has never even claimed to have mailed a check to Mabry or MRPC from Mississippi. Further, it is highly doubtful that such mailing would alone suffice, at least as a matter of federal constitutional law. *See Caldwell v. Palmetto State Savings Bank of South Carolina,* 811 F.2d 916, 918 (5th Cir.1987); *Stuart v. Spademan,* 772 F.2d 1185, 1193–94 (5th Cir.1985); *Hydrokinetics, Inc. v. Alaska Mechanical, Inc.,* 700 F.2d 1026, 1029–30 (5th Cir.1983), *cert. denied,* 466 U.S. 962, 104 S.Ct. 2180, 80 L.Ed.2d 561 (1984).

Nevertheless, the limitations of *Mladinich*'s tri-partite test retain viability, but "only as to the 'doing business' category of Mississippi's existing long-arm statute." *Thompson,* 755 F.2d at 1167.[3] *See Republic–Transcon Industries, Inc. v. Templeton,* 253 Miss. 132, 175 So.2d 185, 189 (1965) (applying three-part test in "doing business" case); *Collins v. Truck Equipment Sales, Inc.,* 231 So.2d 187, 188 (Miss. 1970) (same; no causal link between defendant's forum activities and alleged negligence); *Ga–Pak Lumber Co. v. Nalley,* 337 So.2d 1270, 1274 (Miss.1976) (no jurisdiction because elements of *Mladinich* test were not met). Thus we turn our attention to the *Mladinich* test.

There is no evidence in the record that MRPC has ever "purposefully do[ne] some act or consummate[d] some transaction" in Mississippi. MRPC is a professional corporation consisting of about twenty doctors. They confine their respective practices to hospitals in Memphis and the corporation does not solicit patients from Mississippi or advertise there. On these facts, Rittenhouse has not shown that MRPC meets even the first element of the tri-partite test.

Although, as noted below, Mabry has "consummate[d] some transaction" in Mississippi by purchasing property there, this lawsuit is not related to that act and so the *Mladinich* nexus requirement is not satisfied.[4] *Smith v. DeWalt Products Corp.,* 743 F.2d 277, 279 (5th Cir.1984) (same); *see Allen v. Jefferson Lines, Inc.,* 610 F.Supp. 236, 239 (D.Miss.1985) (no jurisdiction because, *inter alia,* of lack of nexus between injury and defendant's Mississippi activities). Except for this property purchase, Mabry has no other contact with Mississippi. He is not licensed to practice medicine in Mississippi, does not reside there, advertise his services there, or conduct any business whatever in that state. On this record, we must hold that neither Mabry nor MRPC are amenable to personal jurisdiction under the "doing business" prong of section 13–3–57.

Rittenhouse cites cases from other jurisdictions finding personal jurisdiction over nonresident physicians or hospitals on somewhat similar facts. Those cases involve the long-arm statutes of other states and are also distinguishable in that the defendant had taken some act to purposely avail himself of the benefits of the forum state. For example, in *Cubbage v. Merchent,* 744 F.2d 665 (9th Cir.1984), *cert. denied,* 470 U.S. 1005, 105 S.Ct. 1359, 84 L.Ed.2d 380 (1985), the Arizona doctors over whom jurisdiction was sought in California had "applied for and were issued California Medi–Cal numbers." *Id.* at 667. This enabled them to receive reimbursement from the State of California for treating patients covered by Medi–Cal. Mabry and MRPC did not similarly avail themselves of benefits offered by Mississippi. This conclusion is not affected by the fact that the Memphis hospitals, where Mabry and other MRPC doctors carried on a large part of their practice, may have "done business" in Mississippi. These hospitals were

---

**3.** This quotation from *Thompson* is superficially in conflict with a sweeping comment in *DeMelo v. Toche Marine, Inc.,* 711 F.2d 1260, 1269 n. 10 (5th Cir.1983), stating that the limits placed by *Mladinich* on the long-arm statute no longer apply. Read in context, however, it appears that *DeMelo* was simply referring to Mississippi jurisprudence suggesting that the tort prong, which was the only long-arm basis asserted in *DeMelo,* was not subject to the *Mladinich* three-part test. For example, the Mississippi case on which *DeMelo* largely relied, *Mandel v. James Graham Brown Foundation, Inc.,* 375 So.2d 1017 (Miss.1979), seems to have found jurisdiction under the tort prong, and certainly does not cast any doubt on the applicability of the *Mladinich* tri-partite test to the doing business prong.

**4.** There is a suggestion in two federal cases that the "doing business" prong requires conduct of a "systematic and ongoing nature." *Allen v. Jefferson Lines, Inc.,* 610 F.Supp. 236, 239 (D.Miss.1985); *Aycock v. Louisiana Aircraft, Inc.,* 617 F.2d 432, 435 (5th Cir.1980), *cert. denied,* 450 U.S. 917, 101 S.Ct. 1361, 67 L.Ed.2d 343 (1981). If this is indeed a correct interpretation of the statute, then Mabry's single purchase of property would not satisfy the first element of the *Mladinich* test. However, the Mississippi courts apparently have not had occasion to decide what minimum level of activity is necessary under *Mladinich*'s first element. In any event, our disposition as to Mabry adequately rests on his failure to satisfy the second element of *Mladinich.*

not shown to be the agents or alter egos of Mabry or MRPC and were not acting on behalf of them; nor were Mabry or MRPC employees of the hospitals.

*Kenerson v. Stevenson,* 604 F.Supp. 792 (D.Me.1985), also cited by Rittenhouse, is even less persuasive: A Maine resident had traveled to New Hampshire for treatment and later brought suit against the New Hampshire doctor, hospital, and the hospital president. The doctor apparently did not contest personal jurisdiction, and the court held it had jurisdiction over the hospital and its president. The hospital participated in a regional organization that contemplated the emergency transfer of its patients to a hospital in Portland, Maine, and the hospital received reimbursement from the State of Maine for covered Maine patients treated at the New Hampshire hospital. Mabry and MRPC did not have the type of contacts with Mississippi that the New Hampshire hospital in *Kenerson* had with Maine. Moreover, the court noted that the plaintiffs' claim in *Kenerson* did not arise out of the defendants' activities in Maine; under the "doing business" prong of Mississippi's long-arm statute, the lack of such a nexus deprives the court of personal jurisdiction over the nonresident.

Rittenhouse also claims *Lemke v. St. Margaret Hospital,* 552 F.Supp. 833 (N.D. Ill.1982), as support. There, an Illinois resident sued *inter alia* an Indiana doctor and hospital in Illinois for causing the death of her son. The court held that under Illinois law, the physician was susceptible to jurisdiction on a "doing business" theory because the hospital solicited patients for him. *Id.* at n. 6. The doctor had not controverted plaintiff's "doing business" allegations, and the court accepted them as true. *Id.* at 838. The court also assumed that the physician had been compensated for treating Illinois residents "with Illinois funds from private or public sources." *Id.* at n. 5. As to public sources, this latter fact distinguishes *Lemke,* and in any event we are not inclined to hold that Mississippi's "doing business" prong embraces the view that a hospital's solicitation can be imputed to its affiliated physicians. This would be a rather expansive definition of "purposeful availment," and though there was Illinois precedent for the result in *Lemke,* there is no similar Mississippi support for that outcome here.

Finally, Rittenhouse relies on *Frazer v. McGowan,* 198 Conn. 243, 502 A.2d 905 (1986). In that case, the Connecticut Supreme Court held that a Rhode Island hospital was amenable to jurisdiction in Connecticut because it solicited patients in Connecticut through advertising and by granting Connecticut doctors admitting privileges. However, unlike the hospital in *Frazer,* Mabry and MRPC did not solicit business in Mississippi, and this distinguishes that case. The defendant doctor in *Frazer* was a Connecticut resident and thus obviously subject to personal jurisdiction in that state, which he apparently never contested.[5]

---

5. Other cases similar to those discussed in the text, but finding no personal jurisdiction, include *Wolf v. Richmond County Hospital Authority,* 745 F.2d 904 (4th Cir.1984) (holding that under South Carolina's long-arm statute, which is coextensive with due process, the court lacked jurisdiction over a Georgia hospital despite the fact that the hospital received twenty percent of its income from South Carolina patients), *cert. denied,* 474 U.S. 826, 106 S.Ct. 83, 88 L.Ed.2d 68 (1985); *Walters v. St. Elizabeth Hospital Medical Center,* 543 F.Supp. 559 (W.D.Pa.1982) (holding that under Pennsylvania's long-arm statute, which is coextensive with due process, the court lacked jurisdiction over an Ohio hospital and commenting, "[a]ccepting numerous Pennsylvania patients in Ohio over the years is not a business activity *within* Pennsylvania"); *Soares v. Roberts,* 417 F.Supp. 304 (D.R.I.1976) (holding, in suit complaining of treatment of Rhode Island plaintiff at facility in Massachusetts, that under Rhode Island's long-arm statute, which is coextensive with due process, the court lacked jurisdiction over a Massachusetts doctor who had not lived or practiced in Rhode Island; rejecting the view that the medical facility's solicitation of Rhode Island patients sufficed to bring its employee physician within the court's jurisdiction); *Gelineau v. New York University Hospital,* 375 F.Supp. 661 (D.N.J.1974) (holding that under New Jersey's long-arm statute, which is coextensive with due process, the court lacked jurisdiction over a New York hospital because the unsolicited decision of the New Jersey patient to seek treatment in New York did not satisfy the requirement that the nonresident defendant deliberately avail itself of the benefits of the forum state).

In sum, we hold that Mabry and MRPC are not amenable to jurisdiction under the "doing business" prong of Mississippi's long-arm statute because the relevant facts do not satisfy the *Mladinich* tri-partite test.

### B. Section 79–1–27

■ The Mississippi Supreme Court has construed section 79–1–27, which is one of the statutes regulating corporations, as supplemental to the state's long-arm statute. *Arrow Food Distributors, Inc. v. Love*, 361 So.2d 324, 327 (Miss.1978), *cert. denied*, 439 U.S. 1073, 99 S.Ct. 845, 59 L.Ed.2d 39 (1979), *overruled on other grounds, Hollingsworth v. Bovaird Supply Co.*, 465 So.2d 311 (Miss.1985). Section 79–1–27 (repealed effective January 1, 1988) provides: "Any corporation claiming existence under the laws of any other state or of any other country foreign to the United States, found doing business in this state, shall be subject to suit here to the same extent that corporations of this state are, whether the cause of action accrued in this state or not."

At the outset, it is clear that this statute has no application to Mabry in his individual capacity. In this case it applies only to MRPC. The chief difference between section 79–1–27 and the "doing business" prong of the long-arm statute is the absence of any express nexus requirement under section 79–1–27. *See Arrow*, 361 So.2d at 327; *Aycock v. Louisiana Aircraft, Inc.*, 617 F.2d 432, 435 (5th Cir.1980) (rejecting under section 79–1–27 the requirement of a direct link and finding jurisdiction because action was "incident" to defendants' business activity in Mississippi), *cert. denied*, 450 U.S. 917, 101 S.Ct. 1361, 67 L.Ed.2d 343 (1981); *contra Washington v. Norton Manufacturing, Inc.*, 588 F.2d 441, 446 (5th Cir.1979) (stating that *Mladinich* test applies to section 79–1–27), *cert. denied*, 442 U.S. 942, 99 S.Ct. 2886, 61 L.Ed.2d 313 (1979).

However, even when jurisdiction is sought under section 79–1–27, it remains necessary for plaintiff to prove that the nonresident corporation "does business" in Mississippi. *Smith*, 743 F.2d at 281;

*Schmid v. Roehm GMBH*, 617 F.Supp. 655, 658 (S.D.Miss.1985). For the reasons already discussed, we have concluded that MRPC conducted no business in Mississippi and, consequently, section 79–1–27 does not provide a state law basis for *in personam* jurisdiction over MRPC.

### C. Attachment Statutes

■ A third method of asserting jurisdiction arises under Mississippi's attachment statutes. Miss.Code Ann. §§ 11–31–1 *et seq.* This method permits the exercise of jurisdiction over defendants, *inter alia*, with "lands and tenements" in Mississippi. *See Administrators of the Tulane Educational Fund v. Cooley*, 462 So.2d 696 (Miss.1984) (discussing attachment basis of jurisdiction), *cert. denied*, 474 U.S. 820, 106 S.Ct. 70, 88 L.Ed.2d 57 (1985); *Gough v. Mabsco, Inc.*, 335 So.2d 910, 911 (Miss. 1976) (attachment case). This basis of jurisdiction cannot apply to MRPC because nothing in the record suggests that it owns any property in Mississippi. However, Mabry owns a condominium in Pickwick Lake, Mississippi.

■ Insofar as Rittenhouse challenges the magistrate's April 1986 order denying her motion to amend, we hold that the matter is not properly before us, inasmuch as no appeal therefrom to the district court was ever taken or attempted and the district court did not in any way review or confirm this order or have any opportunity to do so. *Central Progressive Bank v. Fireman's Fund Ins. Co.*, 658 F.2d 377, 383 (5th Cir.1981); *United States v. Renfro*, 620 F.2d 497, 500 (5th Cir.1980), *cert. denied*, 449 U.S. 921, 101 S.Ct. 321, 66 L.Ed.2d 149 (1980). The order of the magistrate was not a judgment under 28 U.S.C. § 636(c)(3) and is not within the provisions of Fed.R.Civ.P. 73(c), but is rather governed by Fed.R.Civ.P. 72. Here the district court, Judge Biggers, had dismissed the suit against appellees on August 6, 1985, and had denied reconsideration thereof on August 23, 1985. Judge Davidson's August 4, 1986 agreed order dismissing Methodist Hospitals makes absolutely no reference to appellees or to anything other than Rittenhouse's claims against Methodist

Hospitals (and appellees did not join in or consent to that order), and it is the only district court order in the case subsequent to August 23, 1985, except for Judge Biggers' February 24, 1986 order transferring the case to Judge Davidson. Rittenhouse does not claim that the district court's August 23, 1985 order denying her motion for reconsideration of the August 6 order dismissing her suit against appellees also denied her motion to amend. The request to amend, though made in the motion to reconsider (as well as in a separate motion filed the same day), is not referenced in the August 23 order. Even if that order be deemed a denial of the request to amend, the denial would be reviewed under an abuse of discretion standard. *Chitimacha Tribe of Louisiana v. Harry L. Laws Co.*, 690 F.2d 1157, 1163–64 (5th Cir.1982), *cert. denied*, 464 U.S. 814, 104 S.Ct. 69, 78 L.Ed. 2d 83 (1983). No such abuse is reflected here. When the district court made its August 6, 1985 ruling, the case had been pending approximately one year, and throughout that time Rittenhouse had known of appellees' jurisdictional challenge; moreover, since not later than December 1984, Rittenhouse had known of every fact suggesting an attachment theory. However, prior to August 16, 1985, Rittenhouse never asserted, or sought to assert, attachment as a basis for jurisdiction, did not allege, or seek to allege, facts necessary to support jurisdiction on that basis, and did not ever attempt to have attachment process issued. No possible good cause for this delay is suggested. *Cf.* Fed.R.Civ.P. 4(j).

We reject Rittenhouse's appeal so far as it asserts that she was erroneously prevented from proceeding on an attachment theory.

## II. Dr. Wardlaw

While the parties have focused their attention on whether Dr. Wardlaw was amenable to the court's jurisdiction under Mississippi's long-arm statute, it nevertheless is apparently undisputed that he was served in person within Mississippi. His corporation, Gastroenterology, was served in like manner—by personal service in Mississippi on him, as the corporation's registered agent.[6]

Under common law, a state can exercise *in personam* jurisdiction over any party found within its borders. *International Shoe Co. v. Washington*, 326 U.S. 310, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945); *Restatement (Second) Conflict of Laws* § 28 comment a; C. Wright & A. Miller, 4 *Federal Practice and Procedure (Civil)* § 1064 (1969); R. Casad, *Jurisdiction in Civil Actions* 2–10 to 2–12 (1983). We thoroughly analyzed this "transient presence" basis for personal jurisdiction in *Amusement Equipment, Inc. v. Mordelt,*

**6.** One summons directed the local sheriff "to serve this Summons and a copy of the Complaint in this action upon Dr. Lee L. Wardlaw" and gave the address of a Mississippi clinic where Wardlaw had held weekly office hours beginning in 1984. The sheriff's return was signed by a deputy sheriff and stated, "I have this day executed the within writ personally by delivering to the within named defendant Dr. Lee L. Wardlaw ... a true copy of this writ and Sum[mons]...." This is the form prescribed by Miss.Code Ann. § 13–3–35 when process has been delivered to defendant personally. A second summons similarly directed personal service on Gastroenterology "by service of process on its appointed Registered Agent, Dr. Lee L. Wardlaw" and listed both Wardlaw's Tennessee address and the address of the referenced Mississippi clinic where he practiced once a week. The sheriff's return on this summons was signed and returned the same day as the first summons, suggesting that both were served simultaneously.

Rittenhouse has maintained throughout her case that Wardlaw and his corporation were personally served in Mississippi and defendants have not contested this. In fact, the closest reference to this issue in defendants' brief is the comment, "Appellant places great reliance upon the fact that Dr. Wardlaw and his professional corporation were served with process by the DeSoto County, Mississippi Sheriff's Department." This is not quite an admission that Wardlaw was served *in* Mississippi, but it is tantamount to such in the absence of any explicit disagreement with plaintiff's claim that Wardlaw and Gastroenterology were personally served in Mississippi. The district court seems to have credited Rittenhouse's claim that she served Wardlaw personally, but held that "personal service alone is not enough for *in personam* jurisdiction."

Wardlaw has not complained that his service was defective under Mississippi law. We assume that service on him comported with Mississippi requirements.

779 F.2d 264 (5th Cir.1985), and reaffirmed its constitutionality, despite the speculations of many that the Supreme Court had cast a pall across mere presence as a jurisdictional basis in *Shaffer v. Heitner*, 433 U.S. 186, 97 S.Ct. 2569, 53 L.Ed.2d 683 (1977). *See Holt Oil & Gas Corp. v. Harvey*, 801 F.2d 773, 779 n. 4 (5th Cir.1986) (noting that *Amusement* "reaffirmed the continuing existence of transient jurisdiction in certain cases in which the defendant is served while physically present within the forum"), *cert. denied*, —— U.S. ——, 107 S.Ct. 1892, 95 L.Ed.2d 499 (1987).

We have not found any Mississippi case or statute challenging this basis for jurisdiction. We do not regard section 13–3–57 as dispositive because it speaks only to when service on or through the Secretary of State is authorized, while here there was direct personal service. Sections 13–3–33 and 13–3–49, respecting service by direct personal delivery on individuals and corporations (through their designated agents or officers), are not expressly restricted to resident defendants. We believe that Mississippi would recognize this jurisdictional basis if called upon to decide the question. *Cf. Munford, Inc. v. Peterson*, 368 So.2d 213, 215 (Miss.1979) ("[w]here there is no statute pertaining to a subject, the common law prevails"); *American Cas. Co. v. Kincade*, 219 Miss. 653, 69 So.2d 820, 824 (1954) (quoting with approval from *Pennoyer v. Neff*, 95 U.S. 714, 24 L.Ed. 565 (1877), including the passage, "every state possesses exclusive jurisdiction and sovereignty over persons and property within its territory," (95 U.S. at 722, 24 L.Ed. at 568)). Therefore, because Wardlaw was served while in Mississippi, the Mississippi federal court had personal jurisdiction over him.

*III. Gastroenterology*

The mere fact that Wardlaw, the sole member of his Tennessee professional corporation, Gastroenterology, was personally present in Mississippi when served with process, would not necessarily mean that Gastroenterology itself was so present. "The law of Mississippi is clear that a corporation is a creature of law, with a legal identity separate and distinct from

that of its owners." *In re Grand Jury Proceedings (Doe)*, 814 F.2d 190, 192 (5th Cir.1987). Simply because a state acquires jurisdiction over all the stockholders, officers or directors of a corporation does not necessarily mean that the corporation is amenable to the state's jurisdiction. *See Restatement (Second) Conflict of Laws* § 42 comments d & e (1971). *See also* R. Weintraub, *Commentary on the Conflict of Laws* § 4.9 at 146, § 4.21 at 192 (3d ed. 1986). Indeed, it may be questionable whether transient jurisdiction, as commonly understood with respect to individuals, of itself constitutes a discrete basis for jurisdiction over corporations. *See Weintraub, supra; Restatement, supra*, §§ 42–52. We need not decide that issue, however, as section 79–1–27, discussed earlier, provides a Mississippi state law basis of obtaining jurisdiction over Gastroenterology.

▪ We have found no cases interpreting section 79–1–27 in this context, but its literal terms apply because, quite simply, Gastroenterology was "found doing business" in Mississippi. Gastroenterology is the mirror image of Wardlaw. He is the only member of this professional corporation. Gastroenterology does not conduct business unless Wardlaw does, and when he treats a patient, the corporation by that fact alone is conducting business to precisely the same extent. When Wardlaw was served in Mississippi, he was there to treat and diagnose patients. For these reasons, we hold that Gastroenterology was in Mississippi doing business the day it was served through Wardlaw. This satisfies the requirements of section 79–1–27. We emphasize that Wardlaw was the *only* member of this corporation and that service was effected on Wardlaw as Gastroenterology's agent while he was directly engaged in the corporation's business.

Gastroenterology correctly points out that it did not begin doing business in Mississippi until well after Rittenhouse sustained her injuries. This is not, however, a relevant consideration under section 79–1–27, which does not distinguish between corporations doing business in Mississippi at

the time the cause of action arose and corporations doing business only at the time of suit. Having found a state law basis for reaching Gastroenterology, we must decide whether the federal constitution prohibits the exercise of that jurisdiction.

When, as in this case, the cause of action does not rise out of a nonresident defendant's contacts with the forum state, those contacts must be "systematic and continuous," so as to afford what is commonly called general jurisdiction. *Helicopteros,* 466 U.S. 408, 104 S.Ct. at 1872–73, 80 L.Ed. 2d 404 (1984); *Perkins v. Benguet Consolidated Mining Co.,* 342 U.S. 437, 72 S.Ct. 413, 96 L.Ed. 485 (1952); *Petroleum Helicopters, Inc. v. Avco Corp.,* 804 F.2d 1367, 1369–70 (5th Cir.1986); *see International Shoe Co. v. Washington,* 326 U.S. 310, 66 S.Ct. 154, 159, 90 L.Ed. 95 (1945) (citing cases in which "the continuous corporate operations within a state were thought so substantial and of such a nature as to justify suit against it on causes of action entirely distinct from those activities"). This is a greater level of activity than required for specific jurisdiction, which is appropriate when there is a sufficient nexus between the nonresident defendant's contacts and the action. *E.g., Petroleum Helicopters,* 804 F.2d at 1370.

Gastroenterology's Mississippi contacts were sufficient to justify an exercise of general jurisdiction. Starting in 1984, Gastroenterology conducted its affairs in Mississippi every fifth business day. This conduct was calculated rather than fortuitous and regular and continuous rather than sporadic or isolated. Moreover, the business conducted in Mississippi was not only essentially local in character but was performed there through the nerve center, heart, and soul of the corporation, namely, Dr. Wardlaw (who was then licensed to practice in Mississippi), and necessarily amounted, at those times, to almost all the business then being done by the corporation. *See Perkins.* That distinguishes this case from our recent decisions in *Petroleum Helicopters, supra,* and *Bearry v. Beech Aircraft Corp.,* 818 F.2d 370 (5th Cir.1987). We conclude that Gastroenterol-

ogy had adequate Mississippi contacts, of a sufficiently systematic and continuous nature, to meet that requirement for Mississippi's exercise of general jurisdiction over it. *See Holt Oil & Gas Corp. v. Harvey,* 801 F.2d 773, 779 (5th Cir.1986), *cert. denied,* —— U.S. ——, 107 S.Ct. 1892, 95 L.Ed.2d 499 (1987).

Beyond minimum contacts, however, we must also determine whether the exercise of general jurisdiction in this case would be fair and reasonable, considering the burden on the defendant, the interests of the forum state, the interests of the plaintiff in obtaining relief, and the intents of the several states. *Bearry,* 818 F.2d at 377. The interests of the plaintiff, a Mississippi resident both when injured and when suit was filed, and of the forum state, Mississippi, whose citizen was injured and seeks recovery, tend to support the fairness and reasonableness of Mississippi's exercising jurisdiction in this instance. *Harvey,* 801 F.2d at 780; *Thompson v. Chrysler Motors Corp.,* 755 F.2d 1162, 1173 (5th Cir.1985). Also, the interests of the forum are somewhat enhanced, and the burden on the defendant is somewhat mitigated, by the fact that the defendant's present business in Mississippi is of the same kind as that out of which this suit arose. This factor likewise serves to at least slightly mitigate any invasion of Tennessee's interest which Mississippi's exercise of jurisdiction might entail. The burden on the defendant is likewise mitigated by the factor of geographical proximity. We hold that considerations of fairness and reasonableness do not preclude Mississippi's exercise of general jurisdiction over Gastroenterology in this case. Indeed, in these circumstances, it would be a jarring incongruity to hold that due process and federalism concerns permit jurisdiction over Wardlaw, as we have, but prohibit jurisdiction over his mirror image— Gastroenterology.

### Conclusion

Dr. Wardlaw and his corporation were served in Mississippi in accordance with Mississippi law while conducting business there. Dr. Wardlaw is amenable to jurisdiction on a "transient presence" theory; Gastroenterology is amenable under sec-

tion 79–1–27. We reverse the district court's dismissal of Dr. Wardlaw and Gastroenterology and as to those two defendants only the case is remanded for further proceedings; we affirm the dismissal of Dr. Mabry and MRPC.

AFFIRMED in part; REVERSED in part and REMANDED.