Kenneth PETERSON, Plaintiff,

v.

TEST INTERNATIONAL, E.C. and Bechtel International, Inc., Defendants.

Civ. A. No. 1:94cv558GR.

United States District Court, S.D. Mississippi, Southern Division.

Aug. 28, 1995.

Harry B. Ward, Law Offices of Donald J. Rafferty, Gulfport, MS, for plaintiff.

Paula A. Graves, Jeffrey A. Walker, Emerson Barney Robinson, III, Butler, Snow, O'Mara, Stevens & Cannada, Jackson, MS, for Test International, E.C.

William A. Pyle, Pyle, Dreher, Mills & Dye, Ridgeland, MS, for Bechtel International, Inc.

## AMENDED MEMORANDUM OPINION

GEX, District Judge.

This cause is before the Court on the separate motions to dismiss filed by defendant Test International, E.C. [Test] [8–1], and Bechtel International, Inc. [Bechtel] [18–

1]. Having considered the record in this action, the briefs of counsel, and being fully advised in the premises, the Court concludes, for reasons set forth below, that the defendants' motions should be granted.

### Statement of Facts

On October 27, 1993, plaintiff Kenneth Peterson, a resident of Mississippi, and defendant Test, a corporation formed under the laws of Bahrain, signed an employment agreement in Gretna, Louisiana. Test, a provider of engineering and technical services to the oil and gas industry, was a subcontractor of defendant Bechtel, a Nevada corporation. Peterson worked for Test at a project site located in Algeria. The contract between Peterson and Test contained a forum limitation clause, which provided the following:

> The Employer and Employee shall be bound by the rules, regulations and laws of Bahrain. The only courts of jurisdiction in any matter, or dispute, and/or controversy arising out of this agreement and/or employment shall be the court of Bahrain.

*See* Test International's Mot. to Dismiss, 1–3; Aff. of Phillip S. Rundle, Exh. A (attached), at 3. The contract further provided that, under certain specified circumstances, Test could terminate the contract of employment for cause without notice. *Id.,* Aff. of Phillip S. Rundle, Exh. A (attached).

On June 30, 1994, Test terminated Peterson's employment while he was on the job site in Algeria. On November 9, 1994, Peterson filed the instant lawsuit against Test and Bechtel in state court, alleging damages pursuant to theories of breach of contract, negligence, and Bechtel's alleged intentional interference of contract with regard to the employment agreement between Test and Peterson. The defendants removed the action to this Court, invoking diversity subject matter jurisdiction pursuant to 28 U.S.C. § 1332.

### Legal Analysis

I. *In Personam Jurisdiction*

Both Test and Bechtel contend in their motions to dismiss that this Court lacks *in personam* jurisdiction under Mississippi's

long-arm statute, Mississippi Code Annotated § 13–3–57. *See* Test's Mem. in Supp. of Mot. to Dismiss at 6–16; Bechtel's Mem. in Supp. of Mot. to Dismiss at 4–13.

■ The Fifth Circuit recently provided the following standard for reviewing the defendants' motions:

> When a nonresident defendant presents a motion to dismiss for lack of personal jurisdiction, the plaintiff bears the burden of establishing the district court's jurisdiction over the nonresident. When the district court rules on the motion without an evidentiary hearing, the plaintiff may bear his burden by presenting a *prima facie* case that personal jurisdiction is proper. Moreover, on a motion to dismiss for lack of jurisdiction, uncontroverted allegations in the plaintiff's complaint must be taken as true, and conflicts between the facts contained in the parties' affidavits must be resolved in the plaintiff's favor for purposes of determining whether a *prima facie* case for personal jurisdiction exists.

*Wilson v. Belin,* 20 F.3d 644, 648 (5th Cir.), *cert. denied,* —— U.S. ——, 115 S.Ct. 322, 130 L.Ed.2d 282 (1994). In federal diversity actions, the Court decides whether *in personam* jurisdiction is lacking by determining (1) whether the nonresident defendant can be sued in the forum state under its applicable long-arm statute, and (2) if the exercise of jurisdiction pursuant to state law satisfies due process under the Fourteenth Amendment. *See Murray v. Remington Arms Co.,* 795 F.Supp. 805, 807 (S.D.Miss.1991); *Cycles, Ltd. v. W.J. Digby, Inc.,* 889 F.2d 612, 616 (5th Cir.1989); *Smith v. DeWalt Prods. Corp.,* 743 F.2d 277, 278 (5th Cir.1984). If there is no basis in state law for exercising jurisdiction over a defendant, it follows that the Court need not consider the question of due process. *See, e.g., Smith,* 743 F.2d at 278 (due process issue not considered because personal jurisdiction lacking under Mississippi law).

Mississippi's long-arm statute reads as follows:

> Any nonresident person, firm, general or limited partnership, or any foreign or other corporation not qualified under the Constitution and laws of this state as to doing business herein, who *shall make a contract* with a resident of this state *to be performed in whole or in part* by any party in this state, or who *shall commit a tort in whole or in part* in this state against a resident or nonresident of this state, or who shall *do any business* or perform any character of work or service in this state, shall by such act or acts be deemed to be doing business in Mississippi and shall thereby be subjected to the jurisdiction of the courts of this state.

Miss.Code Ann. § 13–3–57 (Supp.1995) (emphasis added).[1] To establish a *prima facie* case of personal jurisdiction over the defendants, Peterson therefore has the burden of showing that he qualifies under the "contract," "tort," or "doing business" provision of Mississippi's long-arm statute. *E.g., Murray,* 795 F.Supp. at 807; *DeMelo v. Toche Marine, Inc.,* 711 F.2d 1260, 1270 (5th Cir. 1983).

### A. Contract

Peterson contends that the contract at issue was performed in part in Mississippi. Pl's. Mem. in Opp. to Test's Mot. to Dismiss at 5–6. Peterson sets forth the following in support of his argument:

> It is undisputed that TEST and Peterson entered into a contract. Thus the contract prong also applies to the present facts. TEST entered into a contract with Peterson, a resident of Mississippi, which was performed, in pert [sic] in this State.... TEST provided round trip transportation from New Orleans, Louisiana and or Houston, Texas to the project site in Algeria, Africa. Additionally, TEST provided for transportation from other locations however such costs were borne by Peterson. Once Peterson left his resi-

---

**1.** As noted by Test, Peterson seeks to invoke *in personam* jurisdiction under Mississippi's long-arm statute, reciting language from § 13–3–57, but mistakenly cites Mississippi's venue statute, Mississippi Code Annotated § 11–11–11. *See*

Compl., IV—VI; Test's Mem. in Supp. of Mot. to Dismiss at 3, 6–7. Peterson correctly cites § 13–3–57 in his response to Test's motion to dismiss. Pl's.Mem. in Opp. to Test's Mot. to Dismiss at 3.

dence in Mississippi to travel to the project site in Algeria, he was "within the scope of employment" and was performing his obligation under the Employment Agreement and Memorandum of Assignment. Had a fortuitous event occurred while Peterson was enroute to Algeria, he would be entitled only to worker's compensation for any injury and possible disciplinary actions for not reporting timely to the job site. As such, Peterson was performing his contract, in part, with TEST.

*Id.* at 6.

■ Peterson cites no authority to support his conclusional argument. Assuming that Peterson qualifies as a Mississippi resident, the Court finds that Peterson has not demonstrated that the contract at issue was performed in whole or in part in Mississippi. The record reflects that the final version of the contract was signed in Louisiana and that there was never any contemplation that it would be performed in whole or in part in Mississippi. Further, it is undisputed that the work itself was actually performed in Algeria. In light of the circumstances surrounding the dealings between the parties, the Court accords little significance to Peterson's argument that the first draft of the contract was mailed to his home in Mississippi during his initial negotiations with Test and that he signed the draft and mailed it back to Test in Louisiana. "[Merely contracting with a resident of the forum state is insufficient . . . to subject the nonresident to the forum's jurisdiction.]" *Rittenhouse v. Mabry*, 832 F.2d 1380, 1383–84 (5th Cir.1987) (citation and internal quotation omitted).

Nor does Peterson show how his flight from Mississippi, the added cost for which he concededly bore, constituted part performance of his contract. *Cf. Indianola Prod. Credit Ass'n v. Burnette–Carter*, 450 F.Supp. 303, 305–06 (N.D.Miss.1977) (transporting livestock out of Mississippi for slaughter pur-

suant to contract not sufficient to show contract was performed in part in Mississippi).[2] Nor does Peterson persuade that, because he was obligated to be at the job site in Algeria to perform his duties, he should be able to characterize travel from Mississippi as part performance of his contract. Further, Peterson fails to establish that the mere fact that contractual ramifications might result if travel injuries prevented him from arriving at the job site in Algeria renders his *travel from* Mississippi equivalent to *part performance in* Mississippi. Peterson raises no other argument that warrants further consideration of this issue. The Court concludes that Peterson has not met his burden under the contract prong of section 13–3–57.

### B. *Tort*

To establish jurisdiction under the tort prong of section 13–3–57, the alleged tort must have occurred in part in Mississippi. *E.g., Cycles*, 889 F.2d at 619. Citing Mississippi caselaw, the Fifth Circuit noted the following:

> A tort is not complete until the injury occurs, and if the injury occurs in this state, then, under the . . . statute, the tort is committed, at least in part, in this State, and personal jurisdiction of the nonresident tortfeasor is conferred upon the Mississippi court.

*Id.* (citing *Smith v. Temco, Inc.*, 252 So.2d 212, 216 (Miss.1971)).

■ Peterson fails to establish that the alleged torts occurred in part in Mississippi. In his complaint, Peterson alleges, *inter alia*, that "TEST negligently failed to inquire about BECHTEL's request to remove Kenneth Peterson from the job site. TEST breached its duty to Kenneth Peterson in its failure to diligently investigate whether BECHTEL's request for removal was 'exercised frivolously or vexatiously.' " Compl. at 5. Peterson further alleges that Bechtel in-

---

**2.** Test cites *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 417, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984), in support of its argument that Peterson's unilateral activity is not an appropriate consideration for purposes of determining jurisdiction. Test's Rebut.Mem. in Supp. of Mot. to Dismiss at 3. Although Test's argument may well be germane to the due process

question, it is not determinative of the first inquiry, i.e., whether the defendants are amenable to suit under state law. *See Cycles, supra*, 889 F.2d at 616–17 (court's reference to Supreme Court decision addressing due process issue not controlling on Mississippi's application of § 13–3–57).

tentionally interfered with his contract with Test. *Id.* at 5–6.[3] Clearly, none of the foregoing activities occurred in Mississippi. Rather, Peterson's allegations relate directly to his termination in Algeria. Accordingly, the Court finds that, under Mississippi law, the alleged injury occurred in Algeria where Peterson was terminated, not in Mississippi. Further, assuming *arguendo* that Peterson was a resident of Mississippi during the times relevant to this action, that Peterson might have suffered adverse economic consequences in Mississippi from his termination in Algeria does not recategorize the tort as occurring "in whole or in part" in Mississippi. *See Cycles,* 889 F.2d at 619 (citations omitted); *Mabry,* 832 F.2d at 1384. Therefore, the Court finds that Peterson's argument that the torts at issue are "ongoing" in nature, *see* Pl's. Mem. in Opp. to Test's Mot. to Dismiss at 8, fails to inject any merit into Peterson's baseless argument. The Court further finds that, under Mississippi law, Peterson has not shown that he qualifies under the tort prong of section 13–3–57.

### C. *Doing Business*

■ The parties do not dispute that neither Test nor Bechtel are licensed to do business in Mississippi. The record further reflects that, at times relevant to the instant controversy, neither Test nor Bechtel performed any services in Mississippi. This, however, does not end the inquiry. Peterson concedes that, to prevail under this prong, he must show the following: (1) that the defendants purposefully did some act or consummated some transaction within Mississippi; (2) that the cause of action arose from or is connected with the act or transaction; and (3) that the assumption of jurisdiction by Mississippi would not offend "traditional notions of fair play and substantial justice." *Cycles,* 889 F.2d at 619–20 (applying *Mladinich v. Kohn,* 164 So.2d 785, 789–90 (Miss. 1964)). It is clear that, under the "doing business" prong, the Mississippi Supreme

Court construes section 13–3–57 by considering, *inter alia,* factors relevant to due process under the Fourteenth Amendment.

Peterson presents the following facts in support of his contention that Test is deemed to be doing business under the *Mladinich* test: "(1) TEST solicited Peterson for employment; (2) TEST advertised for employees in Mississippi via newspapers which circulated in Mississippi; (3) TEST employed a number of Mississippi residents; (4) TEST mailed the Contract of Employment and Service to his Mississippi residence; and (5) [t]he cause of action (breach of contract) is connected to Peterson's transactions with TEST." Pl's. Mem. in Opp. to Test's Mot. to Dismiss at 5. On these facts, Peterson contends that Test purposefully performed an act or transaction whereby it availed itself of benefits offered by Mississippi. *Id.* Peterson further contends that, by employing four other Mississippi residents, Test had "systematic and ongoing" contacts with the forum and is thus deemed to be "doing business" in Mississippi. *Id.*

Peterson submits an affidavit, in which he attests that Test had contacted him at his home in Long Beach, Mississippi, "and solicited employment with me." Pl's. Resp. to Test's Mot. to Dismiss, Exh. C, ¶ 5. Peterson further attests that Rundle signed a contract of employment on August 16, 1993, and that the contract was mailed to him at his home address in Mississippi, which he then signed and returned to Rundle at his office in Gretna, Louisiana. *Id.* at ¶¶ 6–8; Exh. B. Although not controlling, Peterson concedes that the draft of the contract to which he refers did not contain his signature. *See id.* Further, Test contends, and Peterson does not contest, that the version of the contract signed by Peterson and Test on October 27, 1993, was consummated in Gretna, Louisiana. *See* Rundle Aff. at ¶ 7 & Exh. A; Aff. of Pamela J. Granger at ¶ 4.

---

3. As submitted by the defendants during a pretrial conference, Peterson's reference to the terms "frivolously" and "vexatiously" apparently stems from the subcontractor agreement between Bechtel and Test providing that Bechtel (contractor) could remove any of Test's (the subcontrac-

tor's) employees "without offering any reason providing only that such right is not to be exercised frivolously or vexatiously ..." GC–34.3; Subcontractor's Labour, Personnel and Work Rules; General Conditions, at 31.

■ Peterson fails to cite any authority distinguishing the caselaw cited by the defendants. Test contends, Rebut.Mem. in Supp. of Mot. to Dismiss at 7–8, and this Court agrees, that merely mailing the proposed contract does not alone satisfy the "doing business" prong of the *Mladinich* test. *See DeCoster*, 461 F.Supp. at 750 (use of federal mails alone does not trigger "doing business" prong). The Court also agrees that extending the reach of section 13–3–57 to include such correspondence may well violate the Fourteenth Amendment. *See Mabry*, 832 F.2d at 1384 n. 2. Moreover, mere negotiations or solicitation for employment by a nonresident defendant from an out-of-state locus is not "doing business" in Mississippi. *See Paul v. International Precious Metals Corp.*, 613 F.Supp. 174, 176 (S.D.Miss.1985) (telephone and mail solicitation); *Reed–Joseph Co. v. DeCoster*, 461 F.Supp. 748, 750 (N.D.Miss.1978) (telephone contract negotiations); *R. Clinton Constr. Co. v. Bryant & Reaves, Inc.*, 442 F.Supp. 838, 850 (N.D.Miss. 1977) (telephone contacts).

■ Rundle further attests that, to his knowledge, none of Test's officers or directors ever traveled to Mississippi to solicit employment from Peterson or any other individuals. *See* Rundle Aff. at ¶¶ 6, 8–9; Second Rundle Aff. at ¶ 11. Peterson does not contest Test's assertion, but states only that he was contacted at his home and solicited for employment. Pl's.Resp. to Test's Mot. to Dismiss, Exh. C, ¶ 5. In any event, assuming *arguendo* that someone at Test did come personally to Peterson's home on one occasion, the Court finds that this would not be outcome determinative in the instant controversy. The Court finds that additional activity, clearly lacking in this case, is required before a nonresident employer's solicitations will amount to "doing business" in the forum. *Cf. Coats v. Penrod Drilling Corp.*, 5 F.3d 877, 880, 882–84 (5th Cir.1993) (sending manager personally into Mississippi to recruit and interview prospective employees on several occasions constitutes "doing business"), *cert. denied*, —— U.S. ——, 114 S.Ct. 1303, 127 L.Ed.2d 654 (1994), *reh'g en banc granted*, 20 F.3d 614 (1994); *Rippy v. Crescent Feed Commodities, Inc.*, 710 F.Supp. 1074, 1078 n. 2 (S.D.Miss.1988); *Collins v. Truck Equipment Sales, Inc.*, 231 So.2d 187, 188 (Miss.1970) (sending sales representatives into Mississippi not "doing business"). Moreover, the Court finds that the mere fact that Test has hired four Mississippi residents, without more, does not constitute sufficient contacts to find that Test was doing business in Mississippi. Nor would the aggregation of facts asserted by Peterson lead to a different result.

Nor does Peterson's advertising argument establish a ground for personal jurisdiction. Test concedes, and Peterson does not contest, that it has advertised in the following newspapers: the Lafayette; Louisiana *Advertiser*; the New Orleans *Times Picayune*; the Houston, Texas *Chronicle*; the Los Angeles, California *Times*; and a paper in Quebec, Canada. *See* Second Rundle Aff. at ¶ 10. However, solicitation through advertisements in out-of-state newspapers that happen to be circulated in Mississippi does not establish jurisdiction under the long-arm statute's "doing business" prong. *See Paul*, 613 F.Supp. at 175–76 (indirect solicitation through *Wall Street Journal*'s nationwide distribution channels); *Burnette–Carter*, 450 F.Supp. at 307 (advertisement directly aimed at Mississippi). Peterson's argument therefore collapses.

For reasons set forth above, the Court concludes that Peterson has not shown that the defendants are amenable to suit under Mississippi's long-arm statute. Therefore, the Court need not address separately Test's due process argument. *See, e.g., Smith*, 743 F.2d at 278. Nor could Peterson prevail on this prong. Assuming *arguendo* that Peterson's allegations brought the defendants within the reach of section 13–3–57, the Court finds that the plaintiff's maintenance of this action against the defendants in Mississippi would "offend traditional notions of fair play and substantial justice." *International Shoe Co. v. State of Washington, Office of Unemployment Compensation and Placement*, 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945) (citation and internal quotation omitted). As addressed by authority cited *supra* in the *Mladinich* analysis, the Court finds that the contacts of the defendants were not sufficient to meet the stric-

tures of the Fourteenth Amendment. *See, e.g., Helicopteros,* 466 U.S. at 414–17, 104 S.Ct. at 1872–74; *Hanson v. Denckla,* 357 U.S. 235, 253, 78 S.Ct. 1228, 1239–40, 2 L.Ed.2d 1283 (1958).

## II. *Forum Selection Clause*

The foregoing analysis does not, in any event, close the jurisdictional inquiry. Test contends that, alternatively, even if there were *in personam* jurisdiction, the forum selection clause expressly provides that the exclusive forum in this case is the court of Bahrain, not the courts of Mississippi. *See* Test's Mem. in Supp. of Mot. to Dismiss at 17–20.

 The Court finds that, on its face, the clause at issue clearly and unequivocally limits the forum to the court of Bahrain. *See Caldas & Sons, Inc. v. Willingham,* 17 F.3d 123 (Miss.1994) (contrasting permissive and mandatory forum selection clauses). The enforceability of the clause is governed by federal law. *Carnival Cruise Lines, Inc. v. Shute,* 499 U.S. 585, 590, 111 S.Ct. 1522, 1525–26, 113 L.Ed.2d 622 (1991). Such clauses are *"prima facie* valid and should be enforced unless enforcement is shown by the resisting party to be 'unreasonable' under the circumstances." *M/S Bremen v. Zapata Off-Shore Co.,* 407 U.S. 1, 10, 92 S.Ct. 1907, 1913, 32 L.Ed.2d 513 (1972) (citations omitted; emphasis added). Stated differently, such clauses will generally be enforced specifically "unless [the aggrieved party] . . . clearly show[s] that enforcement would be unreasonable and unjust, or that the clause was invalid for such reasons as fraud and overreaching." *Id.* at 15, 92 S.Ct. at 1916. The Supreme Court has recently declared that judicial scrutiny of such clauses amounts to a determination of "fundamental fairness." *Shute,* 499 U.S. at 595, 111 S.Ct. at 1528.

 Peterson contends that the clause is unreasonable because the Bahrain forum is inconvenient. Pl's.Mem. in Opp. to Test's Mot. to Dismiss at 8. Although a showing of "serious inconvenience of the contractual forum . . . might carry greater weight in determining the reasonableness of the forum clause[,]" parties alleging unfairness based on the remoteness of the contrac-

tual forum still bear a "heavy burden of proof." *Shute,* 499 U.S. at 592, 111 S.Ct. at 1526 (citation and internal quotation omitted). The Court finds that, however inconvenient the court of Bahrain might be, Peterson has not met his burden of proof that the forum selection clause is unreasonable as a matter of law. In *Shute,* although the facts were different, the Supreme Court provides the following guide:

> As an initial matter, we do not adopt the Court of Appeals' determination that a nonnegotiated forum-selection clause in a form ticket contract is never enforceable simply because it is not the subject of bargaining. Including a reasonable forum clause in a form contract of this kind may well be permissible for several reasons: First, a cruise line has a special interest in limiting the fora in which it potentially could be subject to suit. Because a cruise ship typically carries passengers from many locations, it is not unlikely that a mishap on a cruise could subject the cruise line to litigation in several different fora. Additionally, a clause establishing *ex ante* the forum for dispute resolution has the salutary effect of dispelling any confusion about where suits arising from the contract must be brought and defended, sparing litigants the time and expense of pretrial motions to determine the correct forum and conserving judicial resources that otherwise would be devoted to deciding those motions.

*Id.* at 593–94, 111 S.Ct. at 1527 (citations omitted).

In the instant case, the forum clause was not contained in boilerplate language of a form ticket contract, as in *Shute,* but was clearly set forth in the employment contract in normal print under the bold heading in large print, "Applicable Law." *See* Rundle Aff., Exh. A, at 3. The clause was contained in the preliminary and final drafts of the contract. *See id.;* Pl's.Resp. to Test's Mot. to Dismiss, Exh. A, at 5. Further, the Court finds that Test, as a provider of technical services in several foreign countries, has an interest in establishing a single forum for litigating disputes to avoid confusion and prevent exposure to litigation in multiple fora

from which employees embark to work in foreign worksites. The Court further finds that such an interest is roughly analogous to that of a cruise line. In light of the many potential states or countries from whence Test might solicit its workforce for work abroad, Peterson has not demonstrated why the court of Bahrain, located in the country of Test's incorporation, is unreasonable or fundamentally unfair. Nor does Peterson point to fraud or overreaching on the part of Test officials. To the contrary, the record demonstrates that Test made a systematic, orderly effort to set forth the terms of employment and the respective duties and obligations of the parties.

Peterson points to the unequal bargaining power of the parties. Pl's.Mem. in Opp. to Test's Mot. to Dismiss at 8. Peterson's conclusional argument fails to show how the alleged unequal bargaining power of the parties rendered the forum clause unfair or unreasonable. Peterson contends that, because Test might have brought an action against him in the courts of the United States if he had failed to pay his "Request for Advance" with Test, it is unfair to force him to litigate his claims in Bahrain. *Id.* The Court finds this argument facially unpersuasive because it is based on conjecture and speculation. Moreover, this argument bears the same infirmity as many of Peterson's other arguments. Peterson fails to cite any authority whatever. Nor does he set forth the factual basis for his argument in sufficient detail to permit an examination of its merits. The Court finds that, for reasons set forth above, Peterson fails to demonstrate that the forum clause should not be enforced according to its clear and unequivocal terms.

### Conclusion

Although the forum-selection clause at issue did not prevent Peterson's attempt to litigate his lawsuit in this Court, his attempt, for numerous reasons, has failed. The Court has examined the parties' arguments whether *in personam* jurisdiction is lacking and finds that Peterson has not met his burden to show that the defendants are amenable to suit under the contract, tort, or "doing business" prongs of section 13–3–57, Mississippi's

long-arm statute. Although the Court need not address the issue, the Court further finds that, assuming *arguendo* that the defendants are amenable to suit under section 13–3–57, Peterson fails to demonstrate that the maintenance of this action against the defendants would not "offend traditional notions of fair play and substantial justice." *See International Shoe,* 326 U.S. at 316, 66 S.Ct. at 158 (citation and internal quotation omitted); *Helicopteros,* 466 U.S. at 414–17, 104 S.Ct. at 1872–74; *Denckla,* 357 U.S. at 253, 78 S.Ct. at 1239–40. Accordingly, the Court concludes that Peterson's lawsuit should be dismissed for lack of jurisdiction.

Alternatively, assuming *arguendo* that the defendants are amenable to suit under section 13–3–57 and that subjecting them to suit in Mississippi would not violate due process, the Court finds that Peterson has not overcome the presumption that the instant dispute must be litigated in the court of Bahrain pursuant to the mandatory forum selection clause of the employment contract. This Court therefore finds that it has no jurisdiction to adjudicate the merits of Peterson's complaint and that Peterson must pursue his lawsuit in the court of Bahrain, subject to the laws of that forum, including any applicable statute of limitation.

Accordingly, the Court finds that Peterson's complaint should be dismissed with regard to both Test and Bechtel, and all pending motions should be denied as moot. Further, each party shall bear his/its respective costs. A separate Amended Final Judgement in conformity with and incorporating by reference the foregoing Amended Memorandum Opinion shall issue.

### AMENDED FINAL JUDGMENT

This cause is before the Court on the separate motions to dismiss filed by defendants Test International, E.C. [8–1], and Bechtel International, Inc. [18–1]. In accordance with the Court's Amended Memorandum Opinion, issued this date, and incorporated herein by reference, the Court has determined that this action should be dismissed and judgment in favor of the defendants is warranted. It is therefore,

ORDERED AND ADJUDGED, that the defendants motions to dismiss be, and are hereby, granted. It is further,

ORDERED AND ADJUDGED, that the plaintiff's lawsuit be, and is hereby, dismissed. It is further,

ORDERED AND ADJUDGED, that the Clerk of this Court is directed to enter final judgment in favor of the defendants in accordance with the Court's opinion issued this date. It is further,

ORDERED AND ADJUDGED, that each party shall hereby bear his/its respective costs.

SO ORDERED AND ADJUDGED.